**Brandon T. BEAN**

v.

**Steve BAILEY et al.**

Supreme Court of Tennessee,
at Knoxville.

Sept. 3, 2008, Session.

March 26, 2009.

John T. Milburn Rogers, Greeneville, Tennessee, for the appellant, Brandon T. Bean.

Thomas L. Kilday and Thomas J. Garland, Jr., Greeneville, Tennessee, for the appellees, Terri Lynn Lemons, and Thomas N. Sturgill.

Ann C. Short–Bowers and Ralph E. Harwell, Knoxville, Tennessee, for the intervenor, Rogers, Laughlin, Nunnally, Hood & Crum.

## OPINION

JANICE M. HOLDER, C.J., delivered the opinion of the court, in which WILLIAM M. BARKER, CORNELIA A. CLARK, GARY R. WADE, and WILLIAM C. KOCH, JR., JJ., joined.

In this extraordinary appeal pursuant to Rule 10 of the Tennessee Rules of Appellate Procedure, the plaintiff asserts that the trial court erred in denying the plaintiff's recusal motion. We conclude that the trial court erred by considering the opinion of a third party in violation of Tennessee Supreme Court Rule 10, Canon 3(B)(7) and applying an erroneous standard in evaluating the motion for recusal. Further, we conclude that a person of ordinary prudence in the judge's position would find that the contentious history between the judge and the plaintiff's counsel provides a reasonable basis for questioning the ability of the trial court to be fair and impartial. We reverse the decision of the trial court and remand for proceedings consistent with this opinion.

### Facts & Procedural History

On May 30, 2003, the plaintiff, Brandon T. Bean, filed a complaint against Steve Bailey, Thomas Sturgill, and Terri Lynn Lemons ("the defendants") for personal injuries arising from an incident in which his automobile collided with a horse. Mr. Bean was represented by attorney John Rogers. The defendants filed a motion for summary judgment on June 30, 2006, and the case was assigned to Circuit Judge John Wilson on September 1, 2006. After three continuances at the request of Mr. Rogers, the motion for summary judgment was set for hearing on September 24, 2007.

On September 7, 2007, the plaintiff filed a motion for the recusal of Judge Wilson from this case and all future cases involving Mr. Rogers and his law firm. In support of the motion, the plaintiff alleged that the acrimonious history between Judge Wilson and members of Mr. Rogers' law firm created at least the appearance of bias and prejudice, if not actual bias and prejudice. The motion was supported by twenty-eight exhibits, including affidavits, letters, and transcripts of proceedings.

The relevant events that the plaintiff asserts constitute the appearance of bias and prejudice occurred between 1982 and 1997. In 1982, Mr. Rogers supported his former law partner, C. Berkeley Bell, Jr., for election to the office of District Attorney General for the Third Judicial District. Judge Wilson supported the incumbent, for whom he had previously worked as an Assistant District Attorney. After Mr. Bell was elected, Judge Wilson requested that Mr. Rogers influence General Bell not to transfer the resident officer of the Tennessee Bureau of Investigation ("T.B.I.") to another district. Mr. Rogers alleges that Judge Wilson threatened him, stating that his clients would suffer if he did not help Judge Wilson. Thereafter, Judge Wilson, General Bell, and Mr. Rogers met to discuss the transfer of the T.B.I. officer. Mr. Rogers alleges that Judge Wilson threatened him again at the meeting.

In 1990, a complaint for malicious prosecution was filed against Mr. Rogers as a result of a criminal matter in which Mr. Rogers alleged that he was assaulted. The case was assigned to Judge Wilson. Mr. Rogers requested the recusal of Judge Wilson, and Judge Wilson ultimately granted the request. Mr. Rogers then requested the presiding judge of the Third Judicial District to assist him in seeking the assignment of a judge from another judicial district to hear the case.

On August 29, 1991, the presiding judge of the Third Judicial District sent a letter to the Executive Secretary of the Tennessee Supreme Court requesting the designation of another judge. The letter observed that "Attorney Rogers and Judge Wilson reputedly have no small amount of antipathy toward each other, which antipathy boiled over into full public view within the past year" and that "[t]he public has eyed this continuing fracas with some interest." The first judge assigned to the case died shortly thereafter; a second judge was assigned to the case following more unpleasantries between Judge Wilson and Mr. Rogers. The malicious prosecution case ended on September 11, 1995, when summary judgment was granted in favor of Mr. Rogers.

Also in 1991, Mr. Rogers' law partner, William Scott Nunnally, reported that he had a hostile meeting with Judge Wilson during which Judge Wilson called him "the worst excuse for a lawyer that there has ever been" and ordered him never to appear in his courtroom again.

On January 12, 1993, Judge Wilson was assigned to preside over a medical negligence case in which Mr. Rogers represented the plaintiff. Mr. Rogers filed a motion requesting the recusal of Judge Wilson, and Judge Wilson took the motion under advisement. While the motion for recusal was pending, Judge Wilson requested the assistance of the T.B.I. in determining whether Mr. Rogers had engaged in criminal conduct with respect to the medical negligence case.[1] The T.B.I. notified Judge Wilson that there was no evidence of criminal activity and that any further investigation into the matter could only occur at the request of the District Attorney General.

Two weeks later, Judge Wilson requested the assistance of the presiding judge of the Third Judicial District in determining whether unethical or criminal conduct had occurred with respect to both the malicious prosecution case, over which he was no longer presiding, and the medical negligence case. The presiding judge of the Third Judicial District sought the assistance of the chief justice of this Court, who forwarded the information to the Director of the T.B.I. The deputy director of the T.B.I. investigated Judge Wilson's allegations and determined that no action should be taken.

On March 7, 1996, over three years after filing the motion for recusal in the medical negligence case, Mr. Rogers filed a "Motion to Render Decision" with the circuit justice for the judicial circuit in which his district was located. The motion requested that the circuit justice enter an order compelling Judge Wilson to rule on the motion for recusal or, in the alternative, to direct Judge Wilson to recuse himself from the medical negligence case. In support of his motion to render decision, Mr. Rogers alleged that Judge Wilson caused the T.B.I. to investigate Mr. Rogers for alleged unethical and criminal conduct arising from his representation in the medical negligence case. In addition, Mr. Rogers attached the transcript of a May 16, 1995, hearing concerning Mr. Rogers' motion for the recusal of Judge Wilson in the medical negligence case, during which Judge Wilson questioned Mr. Rogers concerning the malicious prosecution case.

Judge Wilson filed a response to Mr. Rogers' Motion to Render Decision alleging that Mr. Rogers and his colleagues had filed false statements against him due to their "desperation." Judge Wilson alleged

---

1. Judge Wilson suspected that the death constituting the basis of the medical negligence action was a homicide.

that the District Attorney General for the Third Judicial District was biased in favor of Mr. Rogers and his firm, that Mr. Rogers' firm attempted to manipulate a local political poll,[2] and that Mr. Rogers' firm had knowledge of an illegal wiretap of his phone.[3] Judge Wilson stated that although his impartiality may be questionable "from an objective standpoint," he believed he could be impartial.[4]

The circuit justice granted Mr. Rogers' Motion to Render Decision. In her order, she outlined the three-year procedural history of the motion for recusal. The first hearing on the motion was set one year after the original filing, and Judge Wilson entered an ex parte order quashing the notice setting the hearing. The second hearing was scheduled nine months later and was cancelled by Judge Wilson after another motion to quash was filed. The hearing on the recusal motion finally occurred nine months later, and the trial court took the motion under advisement. Despite an additional lapse of ten months, no order was entered. The circuit justice ordered Judge Wilson to rule on the motion for recusal by a specific date and later granted Judge Wilson an extension of time in which to enter an order on the motion.

Judge Wilson and Mr. Rogers also filed complaints against each other for misconduct. In 1995, Judge Wilson filed a complaint with the Board of Professional Responsibility against Mr. Rogers for three separate counts of unprofessional conduct.

All three complaints were dismissed. In 1997, Mr. Rogers filed a complaint with the Tennessee Court of the Judiciary against Judge Wilson. The Court of the Judiciary found that the complaint was meritorious and resolved it privately.

Following the resolution of the complaint against him, Judge Wilson did not hear any contested matters involving Mr. Rogers or his law firm for approximately eleven years. It is unclear from the record whether this action was voluntary. In September 2006, the presiding judge for the Third Judicial District instituted a computerized system that randomly assigned cases to one of the three circuit court judges in the district. On February 15, 2007, Mr. Rogers and his law firm forwarded a letter to Judge Wilson requesting that Judge Wilson recuse himself from all present and future cases involving members of Mr. Rogers' law firm, including the instant case that had been assigned to Judge Wilson in September 2006. When the letter went unanswered, the law firm sent a letter on July 31, 2007, to the presiding judge of the Third Judicial District requesting that he assign the law firm's cases to the other two circuit court judges in the district. The presiding judge refused the law firm's request to be excluded from the new system and stated that Judge Wilson must resolve any motions for recusal in cases to which he was assigned.

---

**2.** Mr. Rogers was involved in requesting that *The Greeneville Sun* conduct a poll of local attorneys evaluating the performance of local judges. Mr. Rogers attests that after the initial request, he had no further involvement in the poll. Mr. Rogers alleges that Judge Wilson blamed Mr. Rogers and his law firm for "stacking the poll" and subjecting Judge Wilson to "unfair criticism."

**3.** The motion for recusal states that on August 2, 1994, Judge Wilson accused Mr. Rogers,

members of his firm, General Bell, and a Federal Bureau of Investigation agent of having knowledge that Judge Wilson's phone had been wiretapped.

**4.** In his response, Judge Wilson also requested that the circuit justice assign another judge to hear the case "because of all the allegations that have been made." It is unclear from the record why this statement was not sufficient to constitute his recusal.

The September 7, 2007, motion for Judge Wilson's recusal in the case presently before us was heard on September 24, 2007. The defendants' counsel objected to the presentation of witnesses by Mr. Rogers, and Judge Wilson denied the recusal motion without hearing testimony. In support of the denial, Judge Wilson stated that he could be "fair and impartial," he had "no bias or prejudice," the motion to recuse was untimely, he had heard uncontested matters involving members of Mr. Rogers' firm for the past eleven years without complaint, and he had had "certain officials look into this matter" who "cleared [him] to try cases involving this firm, particularly Mr. Rogers." When Judge Wilson left the courtroom, Mr. Rogers presented his evidence in support of the plaintiff's motion and questioned several witnesses whose testimony was transcribed. This testimony has been included in the record without objection.

The plaintiff sought an extraordinary appeal pursuant to Rule 10 of the Tennessee Rules of Appellate Procedure to the Court of Appeals, which was denied. We granted the plaintiff's extraordinary appeal to this Court to address the issue of whether the trial court erred in denying the recusal motion.

### Analysis

■■ "The right to a fair trial before an impartial tribunal is a fundamental constitutional right." *State v. Austin,* 87 S.W.3d 447, 470 (Tenn.2002). Article VI, section 11 of the Tennessee Constitution provides, "No Judge of the Supreme or Inferior Courts shall preside on the trial of any cause in the event of which he may be interested...." This provision is intended "to guard against the prejudgment of the rights of litigants and to avoid situations in which the litigants might have cause to conclude that the court had reached a prejudged conclusion because of interest, partiality, or favor." *Austin,* 87 S.W.3d at

470. We have recognized that it is important to preserve the public's confidence in a neutral and impartial judiciary. *Bd. of Prof'l Responsibility v. Slavin,* 145 S.W.3d 538, 548 (Tenn.2004).

■ The defendants argue that the plaintiff's motion for the recusal of Judge Wilson was untimely. A motion for recusal should be filed when the facts forming the basis of that motion become known. *Davis v. Tenn. Dep't of Employment Sec.,* 23 S.W.3d 304, 313 (Tenn.Ct.App.1999). The failure to seek recusal in a timely manner may result in the waiver of any complaint concerning the judge's impartiality. *Id.* A party cannot " 'know of [allegedly] improper judicial conduct, gamble on a favorable result by remaining silent as to that conduct, and then complain that he or she guessed wrong and does not like the outcome.' " *Id.* (quoting *State v. Lotter,* 255 Neb. 456, 586 N.W.2d 591, 610 (1998)) (alteration in original); *see also Pierce v. Tharp,* 224 Tenn. 328, 461 S.W.2d 950, 954 (1970) (finding a waiver when disqualification of some justices was sought after the Supreme Court had announced its decision).

■ Although there was a considerable passage of time between the assignment of the case to Judge Wilson and the formal filing of the motion for recusal, we cannot conclude that the plaintiff waived his right to question the judge's impartiality. The case, which had been pending for several years, was assigned to Judge Wilson in September 2006 for disposition of the defendants' motion for summary judgment. Mr. Rogers requested several continuances due to scheduling conflicts. In February 2007, after the first request for a continuance, Mr. Rogers and his law firm contacted Judge Wilson to request the removal of all the law firm's cases from Judge Wilson's court. That effort was unsuccessful. Following a third request for a

continuance, Mr. Rogers contacted the presiding judge of the Third Judicial District by letter requesting the removal of all the law firm's cases from Judge Wilson's court. Mr. Rogers filed the motion for recusal on September 7, 2007, after the presiding judge refused Mr. Rogers' request. The plaintiff's delay in filing the motion for recusal resulted only in three continuances of the hearing on the motion for summary judgment and provided no procedural advantage to the plaintiff. *See Slavin*, 145 S.W.3d at 547 (holding that a recusal motion is untimely when a party delayed filing such a motion to gain a procedural advantage). The defendants' argument that the plaintiff's motion for recusal was untimely is therefore without merit.

■ During the September 27, 2007, hearing, Judge Wilson denied the recusal motion based, in part, on communication with unidentified "officials" in which Judge Wilson learned that he had been "cleared" to hear cases involving Mr. Rogers and his law firm. Tennessee Supreme Court Rule 10, Canon 3(B)(7)[5] states that a judge shall not consider ex parte communications or other communications made outside the presence of the parties unless one of five exceptions applies. From the limited record, we conclude that although two exceptions have some relevance to these facts, neither exception applies.

First, a judge may consider an ex parte communication if the communication does not involve a substantive matter or an issue on the merits, the judge believes no party will gain an advantage as a result of the communication, and the judge notifies the parties of the substance of the communication and allows them an opportunity to respond. Tenn. Sup.Ct. R. 10, Canon 3(B)(7)(a). Second, a judge may consider an ex parte communication when the judge obtains the advice of a disinterested expert on the law applicable to a proceeding, so long as the judge gives notice to the parties of the consulting expert and the substance of the advice and affords the parties a reasonable opportunity to respond. Tenn. Sup.Ct. R. 10, Canon 3(B)(7)(b). An application of either exception requires notice to the parties and a reasonable opportunity to respond.

In this case, Judge Wilson considered the opinion of a third party without disclosing either the source or the content of the communication and failed to give the parties a reasonable opportunity to respond. Judge Wilson erred in relying on this communication in denying the motion for recusal. *See* Tenn. Sup.Ct. R. 10, Canon 3(B)(7) cmt. ("[A] judge must discourage ex parte communication and allow it only if all the criteria stated in Section 3B(7) are clearly met. A judge *must* disclose to all parties all ex parte communica-

5. Tennessee Supreme Court Rule 10, Canon 3(B)(7) states, in pertinent part:

A judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding except that:

(a) Where circumstances require, ex parte communications for scheduling, administrative purposes or emergencies that do not deal with substantive matters or issues on the merits are authorized; provided:

(i) the judge reasonably believes that no party will gain a procedural or tactical ad-

vantage as a result of the ex parte communication; and

(ii) the judge makes provision promptly to notify all other parties of the substance of the ex parte communication and allows an opportunity to respond.

(b) A judge may obtain the advice of a disinterested expert on the law applicable to a proceeding before the judge if the judge gives notice to the parties of the person consulted and the substance of the advice, and affords the parties reasonable opportunity to respond.

tions described in Sections 3B(7)(a) and 3B(7)(b) regarding a proceeding pending or impending before the judge." (emphasis added)).

■■ The plaintiff also contends that Judge Wilson applied an improper standard in determining whether recusal was appropriate. Whether a trial judge should grant a motion for recusal is within the discretion of the trial judge. *Slavin,* 145 S.W.3d at 546. Such a decision "will not be reversed unless a clear abuse [of discretion] appears on the face of the record." *Davis v. Liberty Mut. Ins. Co.,* 38 S.W.3d 560, 564 (Tenn.2001) (alteration in original). "[A] trial court has abused its discretion only when the trial court has applied an incorrect legal standard, or has reached a decision which is illogical or unreasonable and causes an injustice to the party complaining." *State v. Ruiz,* 204 S.W.3d 772, 778 (Tenn.2006).

■ Tennessee Supreme Court Rule 10, Canon 3(E)(1) states, "A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where: (a) the judge has a personal bias or prejudice concerning a party or a party's lawyer...." We have held that a recusal motion should be granted when "the judge has any doubt as to his or her ability to preside impartially in the case" or " 'when a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality.' " *Davis,* 38 S.W.3d at 564–65 (quoting *Alley v. State,* 882 S.W.2d 810,

820 (Tenn.Crim.App.1994)). Even if a judge believes he can be fair and impartial, the judge should disqualify himself when " 'the judge's impartiality might be reasonably questioned' " because "the appearance of bias is as injurious to the integrity of the judicial system as actual bias." *Id.* (quoting Tenn. Sup.Ct. R. 10, Canon 3(E)(1)).

■ In ruling on the motion for recusal, Judge Wilson stated, "The Court believes it can be fair and impartial. The Court feels it can try the case and be fair and impartial. The only thing the Court will entertain today is the motion ... for Summary Judgment." In making his decision, Judge Wilson failed to consider whether a person of ordinary prudence in his position would find a reasonable basis to question his impartiality in light of the acrimonious history recounted above. In considering only his own belief that he could be fair and impartial and that he had no bias or prejudice, Judge Wilson erred.[6]

■ This case has been pending in Judge Wilson's court since 2006. In the interest of judicial economy, we will consider the merits of the motion for recusal rather than remanding the case for application of the proper standard under which this motion must be decided. *Alley,* 882 S.W.2d at 823 (stating that in the interest of judicial economy, the case will not be remanded to the trial judge to evaluate objectively the potential appearance of bias or prejudice).

■ After a thorough review of the record, we believe that the past acrimonious relationship between Judge Wilson

---

6. The plaintiff argues that the trial court erred in failing to permit an evidentiary hearing or to make findings of fact. We are not persuaded, however, that this omission constitutes an abuse of discretion. A court is not required to make findings of fact on motions for recusal. Tenn. R. Civ. P. 52.01. The plaintiff supported his motion in this case with twenty-eight exhibits to which no objection was made. Although Judge Wilson did not make findings of fact or permit an evidentiary hearing, we are not deprived of a record upon which to review his ruling.

and members of Mr. Rogers' law firm provides a reasonable factual basis for doubting Judge Wilson's impartiality. Judge Wilson requested twice that the T.B.I. investigate Mr. Rogers for criminal conduct and accused Mr. Rogers and members of his firm of tampering with political polls and having knowledge of a wiretap on Judge Wilson's phone. Both Judge Wilson and Mr. Rogers filed claims for misconduct against one another. Numerous hostile meetings took place between Judge Wilson and members of Mr. Rogers' firm, and further, the public had knowledge of the parties' antagonistic relationship. Reviewing the quantity and quality of these contacts between Judge Wilson and members of Mr. Rogers' law firm, we are unconvinced that the passage of time removes the appearance of bias and prejudice.

In this case, we conclude that a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the ability of Judge Wilson to be fair and impartial. We therefore disqualify Judge Wilson from this case and remand this case to the presiding judge of the Third Judicial District for reassignment pursuant to Tennessee Supreme Court Rule 11, VII(c).[7] We take no position regarding Judge Wilson's presiding over other present or future cases involving Mr. Rogers' law firm. Should motions for recusal be filed in other cases, Judge Wilson should exercise his discretion to either grant or deny them in a manner consistent with this opinion.

### Conclusion

We conclude that the trial judge abused his discretion by failing to apply an objective standard in evaluating the motion for recusal. Further, a person of ordinary prudence in the judge's position would find that the contentious history between the judge and the plaintiff's counsel provides a reasonable basis for questioning the ability of the judge to be fair and impartial. We therefore disqualify the judge pursuant to Tennessee Supreme Court Rule 10, Canon 3(E)(1) and remand the case to the presiding judge of the Third Judicial District for transfer to another judge. Costs of this appeal are taxed to the defendants, Thomas N. Sturgill, and Terri Lynn Lemons, for which execution may issue if necessary.

---

7. The plaintiff requests that we adopt the federal approach set forth in 28 U.S.C. § 144 which provides that a disinterested judge shall be assigned to hear a motion for recusal. Tennessee has no similar provision in its rules or statutes. While we decline to adopt such a procedure in this case, we do not intend to foreclose the consideration of such a procedure pursuant to our rulemaking process.