# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs March 26, 2013

## ROBERT OTIS SIMERLY v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Johnson County**
**No. 4638    Robert E. Cupp, Judge**

---

**No. E2012-00060-CCA-R3-PC - Filed May 29, 2013**

---

In 2004, a Johnson County jury convicted the Petitioner, Robert Otis Simerly, of first degree felony murder, and the jury sentenced him to life in prison with the possibility of parole. This Court affirmed his conviction on appeal. *State v. Robert Simerly*, No. E2002-02626-CCA-R3-CD, 2004 WL 443294, at \*1 (Tenn. Crim. App., at Knoxville, Mar 11, 2004), *perm. app. denied* (Tenn. Oct. 4, 2004). The Petitioner filed a petition for post-conviction relief and a motion for recusal, which the post-conviction court denied after a hearing. On appeal, the Petitioner contends that the post-conviction court erred when it denied the Petitioner's motion for recusal because, during the trial, the judge improperly reminded the prosecutor to establish venue. The State counters first that the appeal was untimely filed. The State further avers that the Petitioner is not entitled to relief based upon the trial court's failure to recuse itself. After a thorough review of the record and applicable authorities, we conclude that, pursuant to the circumstances of this case, the Petitioner's petition should not be dismissed based on his failure to timely file a notice of appeal. We further conclude that he is not entitled to post-conviction relief based upon the merits of his claim. The post-conviction court's judgment is, therefore, affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and NORMA MCGEE OGLE, JJ., joined.

C. Brad Sproles, Kingsport, Tennesssee, for the Appellant, Robert Otis Simerly.

Robert E. Cooper, Jr., Attorney General and Reporter; Deshea Dulany Faughn, Assistant Attorney General; Tony Clark, District Attorney General; and Ken Baldwin, Assistant District Attorney General, for the Appellee, State of Tennessee.

# OPINION

## I. Facts

### A. Background and Direct Appeal

This case arises from a murder that occurred in 1999. A Johnson County jury convicted the Petitioner of first degree felony murder. The Petitioner appealed to this Court, and we recited the following facts in our opinion disposing of his appeal:

> In the light most favorable to the state, the evidence established that the [Petitioner] was criminally responsible for another's lethal stabbing of the victim, perpetrated during a robbery of the victim. An NECC inmate testified that, on the morning of October 16, 1999, the [Petitioner] and others were angered because they believed that the victim had informed prison officers that the [Petitioner] and others were "cooking" whiskey in the [Petitioner]'s cell. Inmates testified that the [Petitioner] expressed his intention to rob the victim, despite the pleas of other inmates that the [Petitioner] not pursue the plan.

> In the early evening hours of October 16, 1999, inmate Glen Mellon saw the [Petitioner], co-defendant Duncan, and inmates Mike Benson and Robert Dodd walk 40 or 50 feet from the [Petitioner]'s cell to the victim's cell. Co-defendant Duncan sat on a trash can outside the victim's cell, and Dodd also remained outside "watching for [the [Petitioner] and Benson] while they were in the [victim's cell]." The [Petitioner] and Benson remained in the victim's cell about 20 minutes; when they emerged, the [Petitioner] was wearing the victim's robe and carrying two brown paper bags, and Benson carried a third bag. Duncan rose from his seat on the trash can and took the two bags from the [Petitioner]. The men went to the [Petitioner]'s and Duncan's cell, and then Duncan procured a mop and bucket and began mopping the walkway between their cell and that of the victim.

> Mellon testified that Duncan told him that Duncan had washed the clothes that he and the [Petitioner] had been wearing, cut the numbers from the clothing, and threw the clothing away. Mellon testified that the [Petitioner] sent Duncan to Mellon's cell to ask for bandages for a cut on the [Petitioner]'s hand. Duncan told Mellon that Benson had "poked" out the victim's eyes. Mellon went to the [Petitioner]'s cell and told the [Petitioner] that he had "really messed up," and the [Petitioner] said, "I know[.] I done [sic] something really

bad." During this conversation, Duncan was washing blood from the [Petitioner]'s sneakers. Duncan had a gold chain that Mellon recognized as belonging to the victim. In the [Petitioner]'s and Duncan's cell, Mellon also saw a number of cartons of Doral cigarettes, the brand that the victim traded with other inmates.

Mellon testified that after the murder, at Duncan's request, he took eight rings to an inmate named Lorraine. Duncan later told him that one of the rings belonged to the victim. Mellon identified the ring.

On cross-examination, Mellon admitted that he had not revealed his knowledge about the murder until approximately ten months later.

Inmate Jeff Arwood testified that after prison officers came to the [Petitioner]'s cell and seized "wine," Benson, Dodd, Duncan, and the [Petitioner] were "all mad and said they heard from the horse's mouth that [the victim] had snitched on them over their wine," and they were "going to kill that snitching, treejumping, so and so." Arwood echoed Mellon's testimony that later that evening, Dodd was walking back and forth in front of the victim's cell, while Duncan was seated on a trash can. After hearing a "thump," Arwood saw Benson and the [Petitioner] emerge from the victim's cell carrying paper bags. The [Petitioner] wore the victim's blue robe. Duncan took two bags from the [Petitioner]. Later, Benson came to Arwood's cell and showed him a large bruise on Benson's back. Arwood testified that Benson admitted to killing the victim.

On cross-examination, Arwood acknowledged that, during the investigation of the murder, he told the officers that he had seen nothing and that he had not revealed the facts about which he had testified until a week or two before trial.

Inmate Dana Johnson testified that he heard Duncan and the [Petitioner] discussing robbing the victim. On the evening of October 16, 1999, Johnson saw Dodd standing outside the victim's cell, and about 45 minutes later, Benson brought a bag containing ten packs of cigarettes to Johnson. Later, the [Petitioner] came into Johnson's cell and said that he had cut his hand playing basketball.

Department of Correction personnel testified that after inmate Lorraine had been transferred to a prison in Clifton, Tennessee, they seized from him a

-3-

ring that belonged to the victim.

An officer testified that following the discovery of the victim's body, he searched the [Petitioner]'s cell and discovered a shank FN1 hidden behind a bed post. Another officer testified that she recovered the [Petitioner]'s wet shoes from his cell. In the victim's cell, investigators found a green towel, a tee shirt in a trash can, and a piece of cardboard that bore a clear imprint of a sneaker or tennis shoe.

> FN1. A "shank" is a homemade knife found in prison. *State v. Donaven Brown*, W1999-00629-CCA-R3-CD, slip op. at 3 (Tenn. Crim. App., Jackson, Sept. 14, 2000).

The state called both Benson and Dodd to testify. Benson invoked the Fifth Amendment to the United States Constitution when examined, and Dodd testified that his prior confession had been a lie. He denied participating in or having any knowledge of the robbery and murder of the victim.

The physician who performed the autopsy on the victim testified that the victim had been stabbed 67 times and that some of the wounds penetrated the lungs, heart, and brain.

Tennessee Bureau of Investigation (TBI) personnel testified for the state. Agent Shannon Morton testified that he recovered the victim's watch from a bag containing Duncan's personal property in Duncan's and the [Petitioner]'s cell. The agent testified that Duncan told him that the watch must have been placed there by the [Petitioner]. In addition to the shank found behind the bed in the [Petitioner]'s and Duncan's cell, the agent found two other shanks in trash cans in the pod's common area. Agent Morton investigated information that medical and investigative personnel had stepped on the piece of cardboard found in the victim's cell floor, and the agent was able to eliminate them as the contributors of the shoe print found on the cardboard.

A TBI laboratory technician testified that he had been trained in the analysis of tool marks and that he had analyzed two of the shanks found in NECC following the victim's murder. He compared two shanks-the one from the [Petitioner]'s cell and one of the other shanks recovered-with stab or gouge marks embedded in a fragment of the victim's skull, which had been provided by the medical examiner. The technician testified that the shank from the [Petitioner]'s cell left impressions in a test surface made of lead that were very

-4-

similar to the impressions found in the victim's bone fragment. The other shank tested made dissimilar marks.

A second TBI technician testified as an expert that the shoe prints on the cardboard found in the victim's cell were consistent with the tread print from the [Petitioner]'s sneakers.

A third TBI technician testified as a DNA expert that the [Petitioner]'s blood was present on the towel and tee shirt found in the victim's cell.

*Simerly*, 2004 WL 443294, at *1-4. The Petitioner appealed our holding to the Tennessee Supreme Court, which denied his request for an appeal. *Id.* at *1.

### B. Motion for Recusal and Post-Conviction Petition

In 2005, the Petitioner filed a petition for post-conviction relief. The trial court appointed him counsel, who amended his petition and filed a motion asking the trial judge to recuse himself. The motion asserted that certain allegations contained in the Petitioner's petition for post-conviction relief addressed actions taken by the trial judge during the original trial and might require the trial judge to be a witness. The motion expounded that the petition alleged that the trial judge improperly inserted itself into the proceedings by instructing the State on the need and method for establishing jurisdiction at the close of the State's case in chief. The motion stated that it would be "impossible for [the trial judge] to rule on the issues without, at least, presenting the appearance of bias."

By order, the trial judge denied the motion for recusal. The order states:

The Court is of the opinion that the [P]etitioner is referring to this Court instructing the State at the close of its proof to establish venue in the case.

This judge has been around for a long time and through the years has become conditioned to venue being established by the spoken word i.e. "Johnson County."

However, it is not necessary that the State, through a witness use the magic words that the offense was committed in "Johnson County." Venue can be established circumstantially, as it was here, as it is quite apparent that all jurors would know that Northeast Correctional Complex is located in Johnson County, Tennessee.

However, it is quite apparent that proof of venue is necessary to establish the court's jurisdiction. . . . Here the proven facts were that the matter happened at the Northeast Correctional Complex in Johnson County, Tennessee.

For purposes of the record this Court will admit that the Court did what the [P]etitioner says happened, or, better yet, what the record shows this [C]ourt stated, therefore requiring no further proof.

However, this issue will not make this Court biased, nor in any way cause this [C]ourt to be other than fair to this [P]etitioner.

As relevant to this appeal, the Petitioner's amended petition alleged that the trial court erred when it denied his petition for post-conviction relief on the grounds that, during his trial, the trial judge improperly reminded the district attorney to establish venue. At the hearing on the petition for post-conviction relief, which occurred on December 5, 2006, the parties presented the following evidence: The Petitioner testified that he was convicted in 2001 of first degree felony murder and that Counsel represented him during his trial.[1] During discussion with the trial court, it became clear the Petitioner had filed a "writ," presumably of error coram nobis. The trial court stated that he had "stepped aside" from hearing the petition because of his involvement in the case. The trial court further stated that the Petitioner had filed a complaint against him with the Board.

The Petitioner testified that he filed a motion for the judge to recuse himself that had been denied. The Petitioner said the issue presented in his post-conviction petition, related to the motion, was a "two-part" issue. The Petitioner first took issue with the fact that the trial judge reminded the State to prove venue. He asserted that this violated his Fifth and Sixth Amendment rights. The Petitioner said it was wrong for the trial court to give the State help. He next took issue with the fact that Counsel did not object. Instead, Counsel said "I wish you hadn't said that," but he never lodged an objection.

Counsel testified that he had tried a number of cases and that he was certified to handle death penalty cases. Counsel recalled that the trial court intervened with the State on the issue of proving venue. He said the State had rested and, in his opinion, had not established venue. He agreed it was arguable that venue was established through testimony that the murder occurred at the Northeast Correctional Facility. He agreed that the Northeast Correctional Facility is the largest employer in Johnson County and that most, if not all, residents of Johnson County would know it was located in Johnson County. Counsel said he was going

---

[1]Much of the Petitioner's testimony is not relevant to the issue he presents on appeal. We confine our summary of the facts to those facts relevant to his appeal.

to present this issue on appeal, but his research indicated that the law was that the trial court was vested with discretion to allow the State to reopen their case for the sole purpose of establishing venue.

During cross-examination, Counsel was asked whether he was satisfied with the way he handled the venue issue. Counsel said he could have objected rather than say "I wish you hadn't said that." He said, however, when he went back to his office and researched the issue he learned that the trial court had discretion on the matter. He said that, even if he had made a more "vociferous objection," it was still within the trial court's discretion to overrule that objection and allow the State to present evidence of venue.

The trial court interjected at that point and said:

The . . . logic of it is, is you're not going to let a five day trial fail on two words, Johnson County, and I don't think the appellate courts are going to require me to do that. Again, you know, and, of course . . . that's a matter for an appellate court to look at, but circumstantially you can establish [venue]. And we have cases after cases that tells us now, that the jury can conclude that the prison was located in Johnson County. I didn't. You know, I . . . could have kept my mouth shut and I would have ruled that they had shown by a preponderance of the evidence that they'd established venue either way. For . . . the record.

The post-conviction court issued an order denying the Petitioner's petition for post-conviction relief. The order was not filed until June 27, 2011, more than four years after the hearing, and the post-conviction court noted, reasonably explained, and expressed apologies for the delay in the order. Regarding the issue before us, the post-conviction court held:

7. **Petitioner next complains that this court "imposed himself as an advocate for the prosecution, and instructed the prosecution to establish venue," and [C]ounsel failed to object.** [The]Petitioner testified that when this happened [Counsel] told the [C]ourt that I wish you (the Court) had not said that. Petitioner says his rights under the Fifth & Sixth Amendment to the Constitution were violated when the Court helped the State establish venue. He further says the result of the trial would have been different, as all of this occurred after the state had rested its case.

[Counsel] says he felt that even though that venue had not been established he knew the jury would know that the prison was located in Johnson County, as Northeast is the biggest employer in this county. Trial counsel further admits that venue can be established circumstantially. The [C]ourt

-7-

agrees this is a correct statement of the law. Without the court's intervention, the court would have allowed the case to go to the jury anyway, as venue had in fact been established circumstantially. "Venue is a question for the jury" *State v. Young*, 196 S.W.3d 85 (Tenn. 2006) and can be established by circumstantial evidence, *State v. Bennett*, 549 S.W.2d 949 (Tenn. 1977). To determine venue, a jury is permitted to draw a reasonable inference based on the evidence that was presented, *State v. Johnson*, 673 S.W.2d 877 (Tenn. Crim. App. 1984). The burden is on the state to prove by a preponderance of the evidence that the crime was committed in the county alleged in the indictment. *State v. Anderson*, 985 S.W.2d 9 (Tenn. Crim. App. 1997). **This issue is without merit.**

On January 6, 2012, more than six months after the entry of the post-conviction court's order denying relief, the Petitioner filed his notice of appeal.

## II. Analysis

On appeal, the Petitioner contends that the post-conviction court erred when it denied the Petitioner's recusal motion because, during the trial, the trial court improperly reminded the prosecutor to establish venue. The State counters that the notice of appeal was untimely. The State further contends that the Petitioner is not entitled to post-conviction relief.

### A. Notice of Appeal

The State asserts that this appeal should be dismissed based upon the Petitioner's failure to file a timely notice of appeal. Tennessee Rule of Appellate Procedure 4(a) states that "the notice of appeal required by Rule 3 shall be filed with and received by the clerk of the trial court within 30 days after the date of entry of the judgment appealed from . . . ." Tenn. R. App. P. 4(a). The Rule goes on to state that "in all criminal cases the 'notice of appeal' document is not jurisdictional and the filing of such document may be waived in the interest of justice." *Id.* When determining whether waiver is appropriate, this court "will consider the nature of the issues presented for review, the reasons for and the length of the delay in seeking relief, and any other relevant factors presented in the particular case." *State v. Markettus L. Broyld*, No. M2005-00299-CCA-R3-CO, 2005 WL 3543415, at *1 (Tenn. Crim. App., at Nashville, Dec. 27, 2005), *no Tenn. R. App. P. 11 application filed*.

The State correctly notes that the Petitioner offers no explanation for his failure to timely file his notice of appeal. By all accounts, however, this case has an unusual procedural posture in that the order denying the petition for post-conviction relief was filed more than four years after the hearing on the petition for post-conviction relief. In our view, the interests

of justice require that we waive the requirement that the Petitioner's notice of appeal be filed within thirty days of June 27, 2011. Accordingly, we will review the issue on its merits in the interests of justice.

## B. Motion for Recusal

The Petitioner contends that the post-conviction court erred when it denied his motion for recusal because the judge would have been a proper witness at the post-conviction hearing. The Petitioner argues that, during his trial, the judge "improperly interjected itself in to the State's case by reminding the District Attorney to establish that the crime occurred in Johnson County, Tennessee . . . ." The State counters that the post-conviction court properly denied the Petitioner's motion because the judge was not a necessary witness, in that there were no "disputed evidentiary facts." The State further contends that there is no reasonable basis to question the post-conviction court's impartiality.

"A judge should grant a motion to recuse 'when the judge has any doubt as to his or her ability to preside impartially in the case or when a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality.'" *Smith v. State*, 357 S.W.3d 322, 341 (Tenn. 2011) (quoting *Bean v. Bailey*, 280 S.W.3d 798, 805 (Tenn. 2009). Article VI, section 11 of the Tennessee Constitution provides that "[n]o Judge of the Supreme or Inferior Courts shall preside on the trial of any cause in the event of which he may be interested . . . ." We have observed that "[t]his provision is intended 'to guard against the prejudgment of the rights of litigants and to avoid situations in which the litigants might have cause to conclude that the court had reached a prejudged conclusion because of interest, partiality, or favor.'" *Id.* (citations omitted). Tennessee Code Annotated section 17-2-101 similarly provides that "[n]o judge or chancellor shall be competent, except by consent of all parties, to sit in the following cases: (1) Where the judge or chancellor is interested in the event of any cause."

Furthermore, Tennessee Supreme Court Rule 10, Canon 3(E)(1)[2] provided that "[a] judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where: (a) the judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of disputed evidentiary facts concerning the proceeding." The decision whether to grant a motion for recusal is discretionary with the trial judge. *Smith*, 357 S.W.3d at 341; *Bean*, 280 S.W.3d at 805. The standard, however, is objective; even if a judge subjectively believes he or she can be fair and impartial, the judge should disqualify himself or herself upon request

---

[2]Since the time of the hearing, the Code of Judicial Conduct has been revised. The new applicable rule is Tennessee Supreme Court Rule 10, RJC 2.11.

whenever "the judge's impartiality might be reasonably questioned because the appearance of bias is as injurious to the integrity of the judicial system as actual bias." *Smith*, 357 S.W.3d at 341.

Reviewing the Petitioner's claim, we conclude that the post-conviction court did not err when it denied the Petitioner's motion to recuse as to the post-conviction proceedings. As noted by the State, there was no dispute about the relevant facts. The record clearly indicated that the judge, during the trial, reminded the State it had not had a witness who had used the words "Johnson County." Counsel expressed his displeasure at the trial court's actions, and the State then offered more specific venue testimony. Counsel testified that he researched the issue at the time of the trial and determined the trial court had not acted improperly and that there were no grounds for appeal.

During the post-conviction proceeding, the post-conviction court ruled that the State had, in fact, proven venue with its proof that the murder occurred at Northeast Correctional Facility in combination with the fact that it was commonly known, for several reasons, that the prison was in Johnson County. Counsel also conceded that venue can be proven by circumstantial evidence and that the State had likely proven venue.

Considering the lack of merit of this issue and the lack of disputed facts, we conclude that the post-conviction court did not abuse its discretion when it denied the motion to recuse itself. We hold that a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would not find a reasonable basis for questioning the judge's impartiality. The Petitioner is not entitled to relief on this issue.

## II. Conclusion

After a thorough review of the record and the applicable law, we affirm the post-conviction court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE

-10-