IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 23, 2025

## MATTHEW EDWIN RUSHTON v. WHITNEY BROOKE RUSHTON

**Appeal from the Circuit Court for Lawrence County**
**No. 3642-23  M. Caleb Bayless, Judge**
_____

**No. M2025-00759-COA-T10B-CV**
_____

In this accelerated interlocutory appeal, Father seeks to appeal the denial of his motion to recuse the trial court judge. Because we can find no evidence in the record of any bias that would require recusal, we affirm the trial court's denial of the motion.

**Tenn. Sup. Ct. R 10B as of Right; Judgment of the Circuit Court**
**Affirmed and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and JOHN W. MCCLARTY, J., joined.

Matthew Edwin Rushton, Sanford, North Carolina, Pro se.

Stacie Leigh Odeneal, Lawrenceburg, Tennessee, Guardian Ad Litem.

## OPINION

### I. FACTUAL AND PROCEDURAL BACKGROUND

The underlying proceedings in the Lawrence County Circuit Court ("the trial court") concern the post-divorce custody of the two minor children born to Matthew Edwin Rushton ("Father") and Whitney Brooke Rushton ("Mother"). Father filed a "Verified Motion Made in Good Faith for Recusal or Disqualification of Judge Caleb Bayless of the 22nd Judicial District" on April 25, 2025. The motion stated that it was "made in good faith[,]" "not presented for any improper purpose[,]" and "based on personal knowledge[.]" The motion was also accompanied by a sworn statement that its contents were "true and correct to the best of [Father's] knowledge, information, and belief." *See* Tenn. Sup. Ct. R. 10B, § 1.01.

Father's motion alleged several bases for recusal, including Judge Bayless's (1) appointment of a Guardian ad Litem ("GAL"); (2) "close personal and professional ties" with both the GAL and Mother's attorney; (3) dismissive and condescending remarks toward Father; (4) procedural and evidentiary decisions in Mother's favor over Father's objections; and (5) failure to address improper conduct by Mother's attorney and the GAL. Father argued that Judge Bayless's actions "compromised the integrity of these proceedings" and "create[d] a reasonable perception that Judge Bayless cannot fairly and impartially preside over this case."

The recusal motion was heard on April 29, 2025. The same day, the trial court denied Father's motion by handwriting its ruling on a form "case status order." The order concluded that "for the reasons stated on the record, the Rule 10B of Tennessee Supreme Court [motion] is hereby denied."

An amended order denying Father's motion for recusal was entered May 14, 2025. Therein, the trial court explained the somewhat convoluted procedural history of the proceedings. The case was originally before Judge David Allen and then assumed by Judge Jessica Parrish upon Judge Allen's retirement. After Judge Parrish started medical leave in February 2025, certain matters were heard by Judge M. Caleb Bayless while others were left to be addressed upon Judge Parrish's return.

The trial court explained that while Judge Parrish had orally approved the appointment of a GAL in January 2025, no written order was entered prior to her medical leave. To "ensure the timely resolution of the parties' custody dispute[,]" Judge Bayless heard the GAL appointment issue anew. A written order appointing the GAL was filed March 6, 2025. The trial court was clear that any additional substantive matters raised by the parties would be adjudicated by Judge Parrish upon her return from medical leave. Thus, Father's alleged bases for recusal relating to the appointment of the GAL and the scope of Judge Bayless's involvement were found to be without merit.[1]

The trial court denied Father's allegations that a conflict of interest requiring recusal stemmed from any "public association" between Judge Bayless, the GAL, and Mother's attorney, emphasizing the small, rural community over which the Twenty-Second Judicial District presides. The trial court also denied that its remarks (1) regarding the order in which it would hear certain issues; (2) cautioning against self-representation; and (3) re-directing Father's argument toward the issues at hand evidenced bias against Father. The trial court further denied that its rulings adverse to Father's position required recusal.

---

[1] The trial court explained that an ex parte motion to suspend Father's visitation pending psychological evaluation filed by the GAL on April 16, 2025, was heard the same day as Father's motion to recuse Judge Bayless. However, the ex parte motion was heard, and ultimately denied, by Judge J. Russell Parkes. As such, the trial court determined that Father's argument that Judge Bayless had failed to address allegedly improper conduct by the parties was rendered moot.

Father's petition for interlocutory recusal appeal was filed May 20, 2025. Father seeks appellate review of the denial of his motion for recusal, "to prevent further irreparable harm, restore confidence in judicial neutrality, and ensure the case is resolved by an impartial tribunal." Father's petition was accompanied by a copy of his recusal motion, the trial court's April 29, 2025 order denying the motion, and various supporting documents. The trial court's May 14, 2025 amended order, however, was not included as an exhibit to Father's petition. *See* Tenn. Sup. Ct. R. 10B § 2.03.

On June 6, 2025, this Court entered an order requiring Mother, and permitting the GAL, to respond to the petition and address concerns raised by the record presented by Father. Pursuant to this request, the GAL provided a copy of the May 14, 2025 amended order and several additional documents.[2] Despite our order, Mother did not file a response.

## II. ANALYSIS

Our sole concern in this interlocutory appeal is whether the trial court erred in denying Appellant's motion for recusal. *See* ***Duke v. Duke***, 398 S.W.3d 665, 668 (Tenn. Ct. App. 2012). Motions to recuse and accelerated interlocutory appeals of orders denying motions to recuse are governed by Rule 10B of the Rules of the Supreme Court of the State of Tennessee. Under Rule 10B, a party is entitled to "an accelerated interlocutory appeal as of right" of an order denying a motion to recuse, with the trial court's ruling "reviewed by the appellate court under a de novo standard of review[.]" Tenn. Sup. Ct. R. 10B, § 2.01.

Before we can address the merits of Father's recusal motion, however, we must consider the procedural requirements set out in Rule 10B. A litigant seeking the disqualification of a trial court judge "shall do so by a written motion filed promptly after a party learns or reasonably should have learned of the facts establishing the basis for recusal." Tenn. Sup. Ct. R. 10B, § 1.01. Once such a motion has been filed, the trial court "shall act promptly by written order and either grant or deny the motion." Tenn. R. Sup. Ct. 10B, § 1.03. If appellate review of the denial is sought, "a petition for recusal appeal shall be filed in the appropriate appellate court within twenty-one days of the trial court's entry of the order." Tenn. Sup. Ct. R. 10B, § 2.02. The petition for interlocutory recusal appeal "shall be accompanied by a copy of the motion and all supporting documents filed in the trial court, a copy of the trial court's order or opinion ruling on the motion, and a copy of any other parts of the trial court record necessary for determination of the appeal." Tenn. Sup. Ct. R. 10B, § 2.03.

Here, Father included the trial court's initial April 29, 2025 denial order with his petition. He did not, however, provide the trial court's May 14, 2025 amended order denying his recusal motion. In the absence of this order, this Court was not provided with

---

[2] Although Father filed an amended petition for interlocutory review discussing the May 14, 2025 order, the order itself was not attached.

an adequate record from which we could evaluate Father's petition; in other words, without a full record detailing what transpired in the trial court, substantive appellate review in an accelerated interlocutory appeal is impossible. *See Elliott v. Elliott*, No. E2012-02448-COA-T10B-CV, 2012 WL 5990268, at *3 (Tenn. Ct. App. Nov. 30, 2012) ("[T]he accelerated nature of these interlocutory appeals as of right requires meticulous compliance with the provisions of Rule 10B regarding the content of the record provided to this Court[.]"); *see also Johnston v. Johnston*, No. E2015-00213-COA-T10B-CV, 2015 WL 739606, at *2 (Tenn. Ct. App. Feb. 20, 2015).

We acknowledge that Appellant is proceeding pro se in this appeal. As explained by this Court, "[t]he courts should take into account that many pro se litigants have no legal training and little familiarity with the judicial system. However, the courts must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary." *Jackson v. Lanphere*, No. M2010-01401-COA-R3-CV, 2011 WL 3566978, at *3 (Tenn. Ct. App. Aug. 12, 2011) (quoting *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003)). Therefore, "[w]hile entitled to fair and equal treatment before the courts, a pro se litigant is still required to comply with substantive and procedural law as do parties represented by counsel." *Gilliam v. Gilliam*, No. M2007-02507-COA-R3-CV, 2008 WL 4922512, at *3 (Tenn. Ct. App. Nov. 13, 2008) (citing *Hessmer*, 138 S.W.3d at 903). Father's pro se status does not relieve him of the obligation to comport with the requirements set out in Rule 10B.

Due to questions presented by the order submitted by Father,[3] however, we directed both Mother and the GAL to respond to Father's recusal appeal. *See* Tenn. Sup. Ct. R. 10B, § 2.05 (stating that the appellate court may order an answer from the other parties). The GAL responded, and supplied this Court with the trial court's May 14, 2025 amended order. Because we have now been provided with the necessary documents to adjudicate this appeal, we will proceed to consider its merits in order to promptly and efficiently resolve this dispute in spite of Father's failure to supply this Court with all necessary documents. *Cf. DiNovo v. Binkley*, 706 S.W.3d 334, 336 (Tenn. 2025) (noting that "Tennessee courts must reasonably exercise their discretion to excuse technical deficiencies that do not significantly impede the appellate process").

It is well settled that "[t]he right to a fair trial before an impartial tribunal is a fundamental constitutional right." *Bean v. Bailey*, 280 S.W.3d 798, 803 (Tenn. 2009) (citation omitted). Tennessee Code of Judicial Conduct Rule 2.11 provides that "[a] judge

---

[3] As noted above, the April 29, 2025 order merely found that Father's recusal motion was denied "for the reasons stated on the record," and so did not "state in writing the grounds upon which [the trial court] denie[d] the motion." Tenn. Sup. Ct. R. 10B, § 1.03. It was unclear from Father's filings whether the trial court made an oral ruling that Father failed to provide to this Court. *See generally Harcrow v. Harcrow*, No. M2019-00353-COA-T10B-CV, 2019 WL 1397085, at *3 (Tenn. Ct. App. Mar. 27, 2019) (providing that a written ruling incorporating written findings and conclusions complies with the requirements of section 1.03 of Rule 10B). As discussed *infra*, the submission by the GAL rendered that question irrelevant.

- 4 -

shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned[.]" Tenn. R. Sup. Ct. 10, § 2.11. We have previously emphasized that "the preservation of the public's confidence in judicial neutrality requires not only that the judge be impartial in fact, but also that the judge be perceived to be impartial." *Kinard v. Kinard*, 986 S.W.2d 220, 228 (Tenn. Ct. App. 1998) (citations omitted). Accordingly, even in cases where a judge sincerely believes that he or she can preside over a matter fairly and impartially, recusal is nevertheless required when a reasonable person "in the judge's position, knowing all the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." *Davis v. Liberty Mut. Ins.*, 38 S.W.3d 560, 564–65 (Tenn. 2001) (quoting *Alley v. State*, 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994)). It is an objective test designed to avoid both actual bias and the appearance of bias, "since the appearance of bias is as injurious to the integrity of the judicial system as actual bias." *Id.* at 565 (citation omitted).

Still, not every bias, partiality, or prejudice requires recusal: "To disqualify, prejudice must be of a personal character, directed at the litigant, 'must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from . . . participation in the case.'" *Alley*, 882 S.W.2d at 821 (quoting *State ex rel. Wesolich v. Goeke*, 794 S.W.2d 692, 697 (Mo. App. 1990)). As such, "[i]f the bias is based upon actual observance of witnesses and evidence given during the trial, the judge's prejudice does not [ordinarily] disqualify the judge." *Id.* (citation omitted). If, however, "the bias is so pervasive that it is sufficient to deny the litigant a fair trial, it need not be extrajudicial[.]" *Id.* In other words, "[i]f the bias is alleged to stem from events occur[r]ing in the course of the litigation of the case, the party seeking recusal has a greater burden to show bias that would require recusal, *i.e.*, that the bias is so pervasive that it is sufficient to deny the litigant a fair trial." *Runyon v. Runyon*, No. W2013-02651-COA-T10B-CV, 2014 WL 1285729, at *6 (Tenn. Ct. App. Mar. 31, 2014) (quoting *McKenzie v. McKenzie*, No. M2014-00010-COA-T10B-CV, 2014 WL 575908, at *1 (Tenn. Ct. App. Feb.11, 2014)).

Additionally, "[a]dverse rulings by a trial court are not usually sufficient grounds to establish bias." *Alley*, 882 S.W.2d at 821; *see also McKenzie*, 2014 WL 575908, at *4 ("Because the protections against bias are generally specific to an individual judge, and arise from a personal situation and a source outside the lawsuit, rulings made during a lawsuit are not enough to require recusal."). Even rulings that are "erroneous, numerous and continuous, do not, without more, justify disqualification." *State v. Cannon*, 254 S.W.3d 287, 308 (Tenn. 2008) (quoting *Alley,* 882 S.W.2d at 821) (finding no error in the trial court denying the defendant's motion to recuse, even after concluding that the trial court committed multiple reversible errors, because there was no proof that the errors resulted from bias or prejudice against the defendant). If this were not the case, "recusal would be required as a matter of course since trial courts necessarily rule against parties and witnesses in every case, and litigants could manipulate the impartiality issue for strategic advantage, which the courts frown upon." *Davis*, 38 S.W.3d at 565.

In his motion, Father raises several issues that purportedly require the recusal of Judge Bayless. After a thorough review, we believe these allegations can be sorted into four categories: (1) Judge Bayless's general participation in the case; (2) Judge Bayless's appointment of the GAL; (3) Judge Bayless's personal connections to Mother's attorney and the GAL; and (4) Judge Bayless's conduct during hearings. We will address each category in turn.

Father first argues that Judge Bayless should not have continued to participate in the case following "the filing of multiple motions that directly challenge[d] his impartiality[.]"[4] Yet the "continued participation" Father points to involved Judge Bayless hearing three motions—each filed after the March 6, 2025 order appointing the GAL and prior to the April 29, 2025 motion for recusal—raising, to various degrees, allegations of bias against Judge Bayless for his part in appointing the GAL. It is clear that Judge Bayless interpreted these motions as raising one interconnected bias argument that was then reiterated in the recusal motion and sought to address all of Father's allegations of bias in the May 14, 2025 amended order denying Father's recusal request. The record contains multiple statements by Judge Bayless that the adjudication of any substantive issues would be best left for Judge Parrish to decide. Indeed, there is no dispute that the GAL's motion regarding Father's visitation was not heard by Judge Bayless, despite being filed prior to the recusal motion. While Rule 10B "precludes a trial judge from taking further action in a case when a motion for recusal is pending against him or her[,]" the purpose of this directive is "to ensure that a trial court makes no *substantive* decisions while the motion to recuse is pending." *Matter of Conservatorship of Tapp*, No. W2021-00718-COA-R3-CV, 2023 WL 1957540, at *8 (Tenn. Ct. App. Feb. 13, 2023) (first quoting *Rich v. Rich*, No. M2018-00485-COA-T10B-CV, 2018 WL 1989619, at *12 n.3 (Tenn. Ct. App. Apr. 27, 2018); and then quoting *Austermiller v. Austermiller*, No. M2022-01611-COA-T10B-CV, 2022 WL 17409921, at *7 (Tenn. Ct. App. Dec. 5, 2022)). We find no basis for disqualification in Judge Bayless addressing all of the allegations of judicial impropriety made by Father at the same time.[5]

Next, Father raises several allegations related to the appointment of the GAL. Father argues that Judge Bayless erred in appointing a GAL at all, because Mother's attorney did

---

[4] Quizzically, Father argues later in his motion that Judge Bayless declining to hear two motions related to Father's parenting time was also evidence of judicial bias. So it appears that Father is alleging that Judge Bayless continued to adjudicate substantive issues on the one hand, and that Judge Bayless did not adjudicate substantive issues on the other, and that both courses of action indicated bias against Father.

[5] Father is also concerned with Judge Bayless's participation in the case despite his "improper consideration of ex parte communications," based on Judge Bayless "being 'privy' to emails not entered into the court record[.]" As Father himself notes, Father, Mother's attorney, the GAL, and Judge Bayless's judicial clerk were copied on this email chain, and the vast majority of the emails were read into the record by Father himself at the hearing to appoint the GAL. This allegation is simply without merit. *See Ex Parte*, Black's Law Dictionary (12th ed. 2024) ("On or from one party only, usu[ally] without notice to or argument from the adverse party[.]").

not make a formal written request for said appointment and an earlier request had been denied by Judge Allen. Father also argues against the specific GAL appointed in this case, because she has mutual Facebook friends with Mother and potential witnesses. Father further alleges that Judge Bayless's decision not to sanction Mother's attorney for providing the GAL with sealed case filings prior to the entry of a written order appointing her to the case is indicative of judicial misconduct. To the extent that these arguments relate to the merits of the trial court's appointment of the GAL, we note that consideration of the correctness of that decision is outside the scope of this accelerated interlocutory recusal appeal. *See Duke*, 398 S.W.3d at 668; *Stark v. Stark*, No. W2019-00901-COA-T10B-CV, 2019 WL 2515925, at *8 (Tenn. Ct. App. June 18, 2019) (explaining that "whether the trial judge erred in his rulings on Husband's motions is not an issue in this limited, interlocutory appeal"). And although Father disagrees with the GAL's involvement in the case, he does not deny that she was ultimately appointed by written order. Thus, we find no reason to question Judge Bayless's impartiality based on his failure to censure Mother's attorney or the GAL for the GAL's inclusion in case-related emails after the GAL was orally appointed by Judge Parrish but before the GAL was formally appointed in writing by Judge Bayless.

Father also argues that Judge Bayless should have recused himself from this case based on his "close personal and professional ties" with Mother's attorney and the GAL. Despite citing "photographs and social media connections," Father did not explain any such connections, beyond a statement by Judge Bayless that judges "interact . . . on a routine basis" with members of the local bars. In discussing concerns regarding Judge Bayless's potential conflicts raised prior to the retirement of Judge Allen later in his motion, Father stated that Judge Bayless attended law school "during the general timeframe" in which Father's father was also enrolled in the school and might have been a student of Father's stepmother while in law school. We cannot agree that a reasonable person in the judge's position would find even the appearance of bias based on such theoretical contact. *See Camp v. Camp*, 361 S.W.3d 539, 548 (Tenn. Ct. App. 2011) (noting that "judges in rural areas sometimes know the parties who appear before the court, and may even share a friendship with them, but this fact alone does not mandate recusal").

Finally, the last category of Father's allegations of bias requiring recusal relates to his interactions with Judge Bayless during the hearing on the appointment of the GAL. Father takes issue with the tone in which Judge Bayless explained the motions he would and would not hear. Father also argues that Judge Bayless "consistently overruled [Father's] legitimate and well-founded objections without proper legal analysis or regard for fairness." One example Father provided was that his objection over Mother's attorney referring to his prior legal counsel as "daddy and stepmother" was overruled. But Father acknowledges that his former attorneys were, in fact, his father and stepmother. Father's objection to Mother's attorney stating that Father had "taken the children to North Carolina," which Father asserts suggested kidnapping, was similarly overruled. Father also alleges that Judge Bayless improperly emphasized his pro se status. Father argues that he was required to comply with technical and procedural requirements, interrupted during his

argument, prevented from fully arguing certain points, and threatened with sanctions, while Mother's attorney was not. According to Father, these interactions were witnessed by the GAL, who subsequently echoed many of the same arguments so "implicitly supported" by Judge Bayless, creating a "deleterious effect that [was] everlasting in [the] case."

As an initial matter, we note that the transcript from the hearing on the appointment of the GAL is replete with examples of extended tangents by Father and then attempts by Judge Bayless to make Father aware of general courtroom procedure and the limited issues actually before the court at that time. That Father, a pro se party, received these reminders while Mother's attorney did not is more reflective of Judge Bayless's efforts to allow the parties to argue on equal footing than any bias against Father's decision to represent himself or his lack of legal knowledge. *See Jackson*, 2011 WL 3566978, at *3 (discussing the balance courts must strike between leniency on pro se parties and fairness to represented parties).

Moreover, to the extent that Father asserts that these allegedly erroneous rulings are proof of a bias against him, they are simply not sufficient to show a bias necessitating disqualification: "Consistent adverse rulings may lead a party to wish for another trial judge, . . . they do not provide a basis for requiring the trial judge's recusal from the case." *In re Samuel P.*, No. W2016-01592-COA-T10B-CV, 2016 WL 4547543, at *2 (Tenn. Ct. App. Aug. 31, 2016) (citing *Runyon*, 2014 WL 1285729, at *10). Nor has Father made any argument that the purported bias shown in Judge Bayless's conduct stems from an extrajudicial source. *See Alley*, 882 S.W.2d at 821. Without more, Father has simply not met his burden to establish that "a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." *Bean*, 280 S.W.3d at 805.

Because Father has failed to establish that the trial court has a personal bias or prejudice or that the trial court's impartiality may reasonably be questioned, we affirm the trial court's denial of Father's motion to recuse.

### III. CONCLUSION

The judgment of the Lawrence County Circuit Court is affirmed, and this matter is remanded to the trial court for further proceedings consistent with this Opinion. Costs of this appeal are taxed to the appellant, Matthew Edwin Rushton, for which execution may issue if necessary.

s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE
