IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 28, 2016

## CHARLES GROVES, ET AL. v. ERNST-WESTERN CORPORATION

Appeal from the Circuit Court for Sumner County
No. 2014CV1243    Joe Thompson, Judge
_____

No. M2016-01529-COA-T10B-CV – Filed September 16, 2016
_____

This is an accelerated interlocutory appeal from the trial court's denial of a recusal motion. Having reviewed the trial court's ruling on the motion pursuant to the de novo standard of review required by Tennessee Supreme Court Rule 10B, we affirm the judgment of the trial court.

**Tenn. Sup. Ct. R. 10B Interlocutory Appeal as of Right; Judgment of the Circuit Court is Affirmed**.

ARNOLD B. GOLDIN, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and W. NEAL MCBRAYER, J., joined.

Jackie Sharp, Jr. and Natalie R. Sharp, Nashville, Tennessee, for the appellants, Charles Groves and Vickie Groves.

R. Patrick Parker, Gallatin, Tennessee, for the appellee, Ernst-Western Corporation.

## OPINION

The case underlying this appeal involves a disputed charge to the credit card of Plaintiffs Charles and Vickie Groves. Plaintiffs filed a complaint against Defendant Ernst-Western Corporation in the Sumner County General Sessions Court in August 2014. After a trial, the General Sessions Court granted judgment in favor of Defendant. Plaintiffs perfected an appeal to the Sumner County Circuit Court. The case was assigned to Circuit Court Judge Joe H. Thompson.

On December 30, 2014, Plaintiffs filed an amended complaint asserting claims against the Defendant for common law fraud and violations of the Tennessee Consumer Protection Act and Tennessee Identity Theft Deterrence Act. Specifically, they alleged that Defendant owned and operated a Holiday Inn Express Hotel in Hendersonville, Tennessee. On April 2, 2014, Ms. Groves presented Plaintiffs' credit card to a clerk at the hotel to reserve a room for a guest named Tiesha Adams. Ms. Groves was under the impression that Ms. Adams would be staying for one night and paying cash for the room. However, without notifying Ms. Groves, the hotel allowed Ms. Adams to extend her stay for 30 nights and made charges to the credit card totaling $3,402.40. As a result of the unauthorized charges, Plaintiffs exceeded their credit limit, and the credit card was cancelled causing substantial harm to Plaintiffs' credit.

In January 2015, the trial court entered a scheduling order setting filing deadlines and scheduling the case for trial in March 2016. On January 13, 2016, Plaintiffs filed a motion to amend their complaint to request $100,000 in compensatory damages, $500,000 in punitive damages, statutory treble damages, attorney's fees, and costs. On January 15, 2016, Plaintiffs filed a motion for sanctions alleging that Defendant intentionally destroyed business records integral to the case. They requested that the trial court enter a default judgment as sanctions against Defendant and award additional punitive damages. On February 3, 2016, Defendant filed a motion for summary judgment.

On February 10, 2016, the trial court conducted a hearing to address the parties' motions. At the outset, the court asked whether Ms. Adams should be joined to the lawsuit as an indispensible party. *See* Tenn. R. Civ. P. 19.01. After hearing arguments from each side, the court indicated that it would consider the issue further before deciding whether to continue the trial. Later, the court expressed concern that Plaintiffs had not deposed any witnesses:

> THE COURT: Here is the concern I have. Let me be frank with both of you. I think the Plaintiffs -- I think you chased a bus, and you caught it, and you don't know what to do with it. You have a relatively small claim that's not going to get tremendously large. You want to amend your complaint to ask for half a million dollars. And the average jury verdict -- I think the plaintiff's jury verdicts are about three out of 12, and the average one is about $23,000.
>
> So it's your lawsuit. You get to do with it what you want. But if there's a discovery abuse here, it's not going to prevent you from having to put on your case. You're still going to have to make your case. Now I may be able to [give a jury instruction on missing evidence] and I won't allow the Defendant

to put on any evidence to contradict the absence of that evidence. . . . But that doesn't relieve you of your responsibility to put witnesses on.

[PLAINTIFFS' COUNSEL]: Yes, Your Honor.

THE COURT: And we're not going to --

[PLAINTIFFS' COUNSEL]: And I apologize --

THE COURT: Now, this isn't going to be a free-for-all.

. . .

THE COURT: Now, whether or not they had someone that had actual knowledge -- they had the person at the desk. I'm sure they've provided you certain information. You've just chosen not to depose the identity of the individuals they have provided to you.

After Plaintiffs' counsel explained that the hotel clerk was unavailable because she no longer lived in the area, Defendant's counsel argued that testimony by Ms. Groves regarding the hotel clerk's statements would be inadmissible hearsay. The trial court agreed. Plaintiffs' counsel then argued that the hotel clerk's statements would be admissible under a hearsay exception. The court expressed skepticism that the statements could be admitted but indicated that it would not make a ruling until it heard each statement. Whereupon the following exchange occurred:

[PLAINTIFFS' COUNSEL]: The statements are outlined in detail in the complaint. Actually, it's the first that I heard that there would be any issue with bringing those statements in.

THE COURT: Well, that's just trial practice. You don't hear those until you try to put the proof in and the other side objects.

The court then turned its attention to Defendant's summary judgment motion. The court noted that the motion was untimely filed but suggested that the case could be disposed of on summary judgment if the material facts of the case were not in dispute. Plaintiffs' counsel indicated that they still objected to the motion as untimely filed and would prefer to have the trial. In doing so, Plaintiffs' counsel explained that the time and resources they would save if the court ruled on the motion would be negligible because, with the scheduled trial date fast

- 3 -

approaching, they would still need to be fully prepared for trial in case the motion was denied. Thereafter, the court made the following inquiry:

> THE COURT: How many jury trials have y'all had?
>
> [PLAINTIFFS' COUNSEL]: One.

As the hearing wound down, the court once again addressed the conspicuous absence of Ms. Adams.

> THE COURT: Well, like I said, I was sort of surprised that the defense didn't make her a party, because she's all in the middle of this stuff. My guess is going to be when she's made a party, that the jury is going to find a significant portion of the fault on her. That's probably why the Plaintiffs didn't make her a party. So that's why I assumed the Defendants probably will.

Following the hearing, the court entered an order granting Plaintiffs' motion to amend and denying Defendant's motion for summary judgment as untimely filed. The order stated that Plaintiffs' motion for sanctions would be addressed at a later hearing.

Both parties filed multiple motions *in limine* after the February 10 hearing. Notably, Defendant also filed a motion to dismiss the case for Plaintiffs' failure to join Ms. Adams as an indispensible party. *See* Tenn. R. Civ. P. 12.02(7). Defendant argued that Ms. Adams's absence from the lawsuit could result in unnecessarily duplicative litigation and requested that the trial court either dismiss the lawsuit or stay the proceedings until she could be joined as a party. *See* Tenn. R. Civ. P. 19.02.

The trial court held another hearing on February 22, 2016. After hearing arguments on Plaintiffs' motion for sanctions, the court ruled that it would issue a jury instruction on the missing evidence. The court then addressed Defendant's motion to dismiss and whether Ms. Adams was an indispensible party to the case. During the discussion, the court expressed frustration that the parties declined to depose Ms. Adams despite acknowledging that she still lived in the area and was related to Plaintiff. The court stated:

> THE COURT: Well, this is what y'all are going to do. Whoever knows where she is, is going to subpoena her, and you all are going to depose her. All right? Once you depose her, you are going to file a copy of the deposition with this Court. I am going to take a look at the deposition. At that point, we are going to decide whether or not she's going to be a party. Trial is continued at this point until I see that deposition.

We have got a case this big over -- and we have two witnesses who are the plaintiffs on one side. We have a $3200 underlying judgment. You want to amend your complaint to half a million dollars. This case -- nobody looks good in this case. All right? Nobody looks good.

So if y'all aren't going to do it the way it needs to be done, I am going to tell you how to do it the way it needs to be done. So she gets deposed next, I want to see the deposition, and then I am going to decide whether this case is going to go forward or not. That's all for today.

. . .

THE COURT: No, that's what we are going to do today. I am tired of wasting time and resources on a case like this when it hasn't been handled properly from the beginning by either side. Okay? So we are going to get her deposed, and then we are going to see where this thing goes.

Following the hearing, the court entered an order continuing the case until Ms. Adams was deposed by either party and her deposition was submitted to the court for determination of her status as an indispensible party. The order further stated that all motions *in limine* would be addressed at trial.

On June 6, 2016, Plaintiffs filed a motion seeking the trial judge's recusal from the case. In the motion, Plaintiffs asserted that the judge created a reasonable appearance of bias during the February 10 and February 22 hearings by:

(1) taking an active role in this case by advocating for Defendant and exceeding his authority in undertaking a fact-finding mission; (2) entering a number of orders contrary to law and the facts presented by the parties that violate Plaintiffs' due process rights; (3) making comments and using gestures that indicate bias on the basis of Plaintiffs' counsel's age and gender; and (4) prejudging the facts in this case prior to hearing any of the evidence and contrary to law.

In large part, Plaintiffs' recusal motion focused on the judge's rulings and efforts at courtroom administration that they alleged created a reasonable appearance of bias. For example, Plaintiffs argued that the judge exceeded his authority and deprived them of control over their case in ordering that the case be continued until Ms. Adams was deposed; that he improperly argued the admissibility of the hotel clerk's statements on Defendant's behalf and improperly attempted to persuade Plaintiffs to waive their timeliness objection to

Defendant's summary judgment motion; and that his decision to continue the case pending the submission of Ms. Adams's deposition and his ruling on their motion for sanctions were contrary to law and violated their due process rights. However, Plaintiffs also argued that the judge was personally biased against their counsel because of their age and inexperience. In support of that assertion, they cited a Twitter message (or "tweet") posted on the judge's Twitter account in October 2015 containing a link to a blog post titled, "Why people under 35 are so unhappy," that, in part, characterized individuals in that age group as "delusional." Plaintiffs noted that their attorneys were in the age group described by the blog post, while Defendant's attorneys were not. They argued that the tweet, coupled with the judge's remarks in the February 10 hearing, formed a reasonable appearance that the judge was biased against their attorneys. Additionally, Plaintiffs argued that the judge was personally biased against their case because it involved a small claim and/or because it arose under the Tennessee Consumer Protection Act. In support of that assertion, they cited evidence that the judge identified himself as a "Sumner Conservative" and contributed money to the Republican Party of Sumner County during his 2014 judicial election. They argued that the judge's political ideology, coupled with his statement in the February 22 hearing that he was "tired of wasting time and resources on a case like this," formed a reasonable appearance of bias against their case. Next, Plaintiffs argued that the judge was biased in favor of Defendant and Defendant's counsel. In support of that assertion, they cited evidence that Defendant's counsel and his employer contributed $250 each to the judge's 2014 judicial campaign. They also cited evidence that, while in private practice approximately 15 years before the filing of this lawsuit, the judge incorporated the Sumner County Hotel & Lodging Association and named two of Defendant's employees to its board of directors. They argued that the judge's affiliation with Defendant and Defendant's counsel formed a reasonable appearance of bias in favor of Defendant. Finally, Plaintiffs argued that the judge's speculation in the February 10 hearing that the jury would apportion fault to Ms. Adams if she were made a party demonstrated that he had prejudged the facts of the case and should therefore be disqualified.

On July 12, 2016, the trial court entered an order denying Plaintiffs' motion for recusal. Thereafter, Plaintiffs filed a timely petition for an accelerated interlocutory appeal as of right. *See* Tenn. Sup. Ct. R. 10B, § 2.

## ISSUE & STANDARD OF REVIEW

In an accelerated interlocutory appeal filed pursuant to Tennessee Supreme Court Rule 10B, we may only review the trial court's order denying a motion to recuse. *Duke v. Duke*, 398 S.W.3d 665, 668 (Tenn. Ct. App. 2012). We review the trial court's ruling on the motion for recusal using a de novo standard of review. Tenn. Sup. Ct. R. 10B, § 2.01. The party seeking recusal bears the burden of presenting evidence to demonstrate a reasonable

- 6 -

basis for questioning the judge's impartiality. *Garner v. Garner*, No. W2016-01213-COA-T10B-CV, 2016 WL 4249479, at \*3 (Tenn. Ct. App. Aug. 10, 2016).

## ANALYSIS

"The right to a fair trial before an impartial tribunal is a fundamental constitutional right." *Bean v. Bailey*, 280 S.W.3d 798, 803 (Tenn. 2009); *see also* Tenn. Const. Art. VI, § 11 ("No Judge of the Supreme or Inferior Courts shall preside on the trial of any cause in the event of which he may be interested[.]"). To protect the right to an impartial judiciary, Tennessee Supreme Court Rule 10, Code of Judicial Conduct Rule 2.11(A) (hereinafter "Rule 2.11") delineates specific circumstances in which a judge's recusal is mandatory. Such circumstances include instances of actual bias and instances in which actual bias is assumed from the judge's specific relationships or actions.[1] While those enumerated circumstances may be reliable indicators of bias, however, a judge's inquiry into his or her own actual bias is not one that can be easily reviewed. *Smith v. State*, 357 S.W.3d 322, 344-45 (Tenn. 2011) (quoting *Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 883 (2009)). Moreover, "the appearance of bias is as injurious to the integrity of the judicial system as actual bias." *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 565 (Tenn. 2001). To ensure not only that a partisan judge will not sit, but also that no reasonable person will suspect it, Rule 2.11 also provides that a judge "shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned[.]" Because the appearance of partiality may arise even when there is none, the scope of that provision is not limited to any particular set of circumstances, and inquiries must be made "on a 'case-by-case' basis, examining the facts and circumstances presented in each particular case." *Smith*, 357 S.W.3d at 344 (citing *Lockhart v. Fretwell*, 506 U.S. 364, 369 n.2 (1993)). The test is an objective one. Even when a judge sincerely believes that he can preside over a matter in a fair and impartial manner, recusal is warranted if a person "in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." *Davis*, 38 S.W.3d at 564-65 (quoting *Alley v. State*, 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994)). In ruling on a motion to recuse, it helps to remain mindful that the underlying intent of the recusal rules is to "to guard against the prejudgment of the rights of litigants and to avoid situations in which the litigants might have cause to conclude that the court had reached a prejudged conclusion because of interest, partiality, or favor." *Bean*, 280 S.W.3d at 803 (quoting *State v. Austin*, 87 S.W.3d 447, 470 (Tenn. 2002)).

---

[1] Generally, Rule 2.11 mandates disqualification for: (1) personal bias or prejudice; (2) family members who are a party, lawyer, interested person, or likely material witness; (3) family members with an economic interest in the subject matter; (4) campaign contributions by an interested party large enough to cause the judge's impartiality to be reasonably questioned; (5) public statements that commit the judge to a particular result; (6) prior participation in the case. Rule 2.11(A)(1)-(6).

Much of the evidence cited in Plaintiffs' recusal motion consists of in-court statements and actions of the judge during the February 10 and February 22 hearings. Defendant contends that this evidence is inadmissible to show the judge's bias due to the long-standing rule that bias or prejudice must stem from an extrajudicial source. *See Alley*, 882 S.W.2d at 821. While partially true, such a broad application of the extrajudicial source rule distracts from the central inquiry in a recusal case.

The primary concern under Rule 2.11 is the appearance of bias or prejudice, not where it originated or how it was disclosed. The extrajudicial source doctrine simply recognizes the pejorative connotation of those terms. *Liteky v. U.S.*, 510 U.S. 540, 550 (1994). In this setting, the terms "bias" and "prejudice" generally refer to a state of mind or attitude that predisposes a judge for or against a party or its case. *See Alley*, 882 S.W.2d at 821. However, not all unfavorable dispositions toward an individual or case can be properly described by those terms. The words suggest a favorable or unfavorable disposition or opinion that is somehow wrongful or inappropriate because it is excessive, undeserved, or rests on knowledge the subject should not possess. *Liteky*, 510 U.S. at 550. Accordingly, not every favorable or unfavorable opinion that a judge has of a party or case will be grounds for recusal. *See Alley*, 882 S.W.2d at 821.

Forming an opinion of litigants and issues based on what is learned in the course of judicial proceedings is necessary to a judge's role in the judicial system.[2] *Liteky*, 510 U.S. at 550-51 ("If the judge did not form judgments of the actors in those court-house dramas called trials, he could never render decisions." (quoting *In re J.P. Linahan, Inc.*, 138 F.2d 650, 654 (2d Cir. 1943))). As such, an opinion formed on the basis of what a judge properly learns during judicial proceedings, and comments that reveal that opinion, are not disqualifying unless they are so extreme that they reflect an utter incapacity to be fair. *See Alley*, 882 S.W.2d at 821 ("[I]f the bias is so pervasive that it is sufficient to deny the litigant a fair trial, it need not be extrajudicial."). Judicial expressions of impatience, dissatisfaction, annoyance, and even anger towards counsel, the parties, or the case, will not ordinarily support a finding of bias or prejudice unless they indicate partiality on the merits of the case. *Id*. at 822. Likewise, adverse rulings of a trial judge, even if erroneous, numerous, and continuous, are generally proper grounds for appeal, not for recusal. *Id*. at 821-22.

---

[2]     The judge who presides at a trial may, upon completion of the evidence, be exceedingly ill disposed towards the defendant, who has been shown to be a thoroughly reprehensible person. But the judge is not thereby recusable for bias or prejudice, since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings, and are indeed sometimes (as in a bench trial) necessary to completion of the judge's task.

*Liteky*, 510 U.S. at 550-51.

On the other hand, in-court comments that reflect a judge's unfavorable disposition towards a party based on an extrajudicial source may be grounds for disqualification if they raise reasonable questions about the judge's impartiality. *See id.* at 822. Of course, that is not to say that judges must magically shed their opinions, values, and moral convictions when they take the bench. Jeffery M. Sharman et al., *Judicial Conduct and Ethics*, § 4.06, at 4-15 (5th ed. 2013) (hereinafter "*Judicial Conduct and Ethics*"). Alone, a judge's personal political, moral, and social views are generally insufficient to disqualify a judge. *Id.* All of a judge's comments and actions must be construed in the context of all surrounding facts and circumstances to determine whether a reasonable person would construe them as indicating partiality on the merits of the case. *See Alley*, 882 S.W.2d at 822.

Applying the principles above to the occurrences at issue in this case is not difficult. Plaintiffs' recusal motion seeks to disqualify the judge on a number of grounds, and we will address each separately. Nevertheless, we conclude that the evidence cited, whether examined separately or collectively, does not demonstrate any reasonable basis for questioning the judge's impartiality.

To begin, we reject Plaintiffs' contention that the trial judge's rulings are a basis for disqualification. Neither his ruling on Plaintiffs' motion for sanctions nor his decision to continue the case reasonably indicates that he has prejudged the merits of the case. Those rulings are therefore proper grounds for eventual appeal, not recusal. As further evidence of alleged bias, Plaintiffs asserted that the judge refused to rule on motions *in limine* they filed prior to the February 22 hearing. That assertion is, at best, a mischaracterization. Both the February 22 hearing transcript and the court's subsequent order reflect that the judge simply decided to reserve ruling on the motions until trial. In any event, because the judge also reserved ruling on motions *in limine* filed by Defendant, we fail to see how this action could indicate bias against Plaintiffs. Likewise, Plaintiffs' assertion that the judge's remarks concerning the admissibility of the hotel clerk's statements and the summary judgment motion are evidence of bias is plainly inaccurate. The fundamental purpose of the judiciary is to interpret and apply the law. *Colonial Pipeline Co. v. Morgan*, 263 S.W.3d 827, 843 n.8 (Tenn. 2008). The fact that a judge's interpretation and application of the law benefits one party over another is not evidence of bias. Again, these are issues for appeal, not recusal.

Moving on, we do not find any evidence that creates a reasonable appearance of judicial bias against Plaintiffs' attorneys because of their age and inexperience. In their recusal motion, Plaintiffs relied primarily on a tweet posted to the judge's twitter account in October 2015 as evidence of that bias. The tweet contains a link to a blog post titled, "Why people under 35 are so unhappy." Though Plaintiffs' attorneys are in the age group described in the blog post, there is nothing to suggest that it was somehow directed at them personally. Moreover, the judge did not write the blog post, nor did his tweet expressly endorse all of its

contents. The tweet states only that the blog post is a "[v]ery interesting read" that ends with "very good advice."[3] In any event, the blog post itself, though written in a sarcastic tone, is not wholly critical of individuals in that age group. It merely suggests those individuals would benefit from tempering their expectations and refrain from measuring themselves against others. As such, it does not constitute a reasonable basis for questioning the judge's impartiality. Plaintiffs further argued that the judge's statement to Plaintiffs' counsel during the February 10 hearing that ruling on hearsay motions at trial is "just trial practice," along with his inquiry into their trial experience during the February 22 hearing, indicates an extrajudicial bias against them. This strained effort to construe the judge's comments as indicative of an extrajudicial age bias is without merit. Considered in the context they were made, both remarks are, at most, manifestations of frustration acquired during the course of the hearings. Neither reveals a degree of antagonism that suggests, even remotely, a bias on the merits of the case.

Plaintiffs' assertion that the judge's political ideology created an appearance of bias against their case is likewise without merit. In support of this assertion, Plaintiffs cited the judge's characterization of himself as a "Sumner Conservative" and his donations to the Republican Party during his 2014 judicial election.[4] They also cited the following comments during the February 22 hearing:

> THE COURT: We have got a case this big over -- and we have two witnesses who are the plaintiffs on one side. We have a $3200 underlying judgment. You want to amend your complaint to half a million dollars. This case -- nobody looks good in this case. All right? Nobody looks good.
>
> . . .
>
> THE COURT: . . . I am tired of wasting time and resources on a case like this .
> . . .

In their recusal motion, Plaintiffs assert that the remarks reveal that the judge "determines the importance and priority of cases based upon a value assigned to them and considers cases in which a party sues for only a few thousand dollars to be a waste of time." We disagree. Viewed in context, the comments merely express the court's frustration *with both parties* for allowing the case to be dragged out by their failure to depose Ms. Adams. Additionally, we

---

[3] In denying the recusal motion, the judge stated that he did not author the tweet and was unaware that any tweets had been posted to his Twitter account since May 2014. He explained that, based on the wording of the tweets, he suspected that the account was somehow linked to his wife's Facebook page.

[4] The records reflect that the judge made a monetary contribution of $100 and purchased event tickets for $1,000 from the Republican Party of Sumner County in April 2014.

reject Plaintiffs' assertion that the judge's political activity somehow disqualifies him from presiding over all cases involving small claims or claims arising under the Tennessee Consumer Protection Act. The Code of Judicial Conduct expressly permits judges to identify themselves as members of a political party and contribute money to political organizations. Tenn. Sup. Ct. R. 10, Canon 4.2(C). Moreover, as we stated earlier, judges are not expected to magically shed their opinions, values, and moral convictions when they take the bench. *Judicial Conduct and Ethics*, § 4.06, at 4-15. We find nothing in the record that creates a reasonable appearance of bias against Plaintiffs' case.

Additionally, we do not find any evidence in the record that reasonably suggests the judge is biased in favor of Defendant or Defendant's counsel. While in private practice, the judge served as incorporator for a nonprofit corporation and named two of Defendant's employees to its board of directors. Standing alone, these allegations fall far short of requiring recusal. To require that a judge disqualify himself from every case in which he is remotely acquainted with a party would impose an unreasonable burden on the judicial system. *Judicial Conduct and Ethics*, § 4.07[4], at 4-26. The corporation was dissolved in 2006. Moreover, the actions at issue took place 15 years before the initiation of this lawsuit. There is nothing in the record to suggest that the judge has an economic interest in these proceedings or an ongoing business or personal relationship with Defendant or its employees. As such, the judge's involvement with Defendant does not constitute a reasonable basis for questioning his impartiality. Likewise, the contributions by Defendant's counsel and his employer to the judge's 2014 judicial campaign do not warrant disqualification. Standing alone, a lawyer's contribution to a judge's election does not prevent the judge from presiding over the lawyer's cases. Rule 2.11, cmt. 7. In determining whether the judge's impartiality might reasonably be questioned, we must consider, among other things, the level of the lawyer's contribution in relation to both the total amount of support for the individual judge's campaign and the total amount spent by all candidates for the judgeship; we also consider the timing of the contribution in relation to the underlying case. *Id.* Here, Defendant's counsel and his employer each contributed $250 to the judge's 2014 judicial campaign. Together, those contributions represent less than 1% of the aggregate support for the judge's campaign ($69,000) and less than 0.5% of the total amount spent by all of the candidates ($162,000).[5] Moreover, the contributions were made prior to the initiation of this lawsuit. As such, they do not merit recusal.

---

[5] The monetary figures representing the aggregate support for the judge's campaign and the total amount spent by all candidates for the judgeship are taken from the trial court's order. Plaintiffs do not dispute their accuracy.

Finally, the judge's in-court remarks do not suggest that he has prejudged the merits of the case. During the February 10 hearing, the judge made the following statements regarding Ms. Adams's absence from the proceedings:

> THE COURT: Well, like I said, I was sort of surprised that the defense didn't make her a party, because she's all in the middle of this stuff. My guess is going to be when she's made a party, that the jury is going to find a significant portion of the fault on her. That's probably why the Plaintiffs didn't make her a party. So that's why I assumed the Defendants probably will.

Those remarks are not disqualifying. Plaintiffs declined to involve Ms. Adams in the lawsuit despite her availability and her significant role in the underlying facts of the case. The judge's speculation as to how the jury might apportion fault if Ms. Adams were made a party to the lawsuit does not suggest that he made a predetermined decision on the merits of the case.

## CONCLUSION

Having carefully reviewed Plaintiffs' motion for recusal de novo, we do not find that any of the materials submitted form a reasonable basis for questioning the judge's impartiality. The trial court's order denying the motion for recusal is therefore affirmed. The case is remanded to the trial court for further proceedings consistent with this opinion. Costs of this appeal are taxed to the appellants, Charles Groves and Vickie Groves, and their surety, for which execution may issue if necessary.

_____
ARNOLD B. GOLDIN, JUDGE