# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on August 12, 2016

## ANDERSON LUMBER COMPANY, INC. v. CHRIS KINNEY, ET AL.

### Appeal from the Circuit Court for Blount County
### No. E24747        David R. Duggan, Judge

---

### No. E2016-01640-COA-T10B-CV – Filed October 26, 2016

---

This is an interlocutory appeal as of right, pursuant to Rule 10B of the Rules of the Supreme Court of Tennessee, from the denial of a Motion for Disqualification or Recusal filed by the Defendants, William Kinney and Margaret Kinney ("Defendants") in this case that arises out of the indebtedness of Defendants' business, Kinney Custom Interiors, to the Plaintiff, Anderson Lumber Company, Inc. ("Plaintiff"). Having reviewed the petition for recusal appeal filed by Defendants, and finding no error in Trial Court's ruling, we affirm.

### Tenn. Sup. Ct. R. 10B Interlocutory Appeal as of Right;
### Judgment of the Circuit Court Affirmed

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and KENNY W. ARMSTRONG, J., joined.

William F. Kinney, Maryville, Tennessee, appellant, *pro se*.

Margaret E. Kinney, Maryville, Tennessee, appellant, *pro se*.

John T. McArthur, Maryville, Tennessee, for the appellee, Anderson Lumber Company, Inc.

### OPINION

This case began in the Trial Court with the filing of a Complaint by Plaintiff against Chris Kinney and Margaret Kinney ("Original Defendants" or "Kinneys") d/b/a Kinney Custom Interiors, in November of 2012, for monies owed by the Kinneys on their account with Plaintiff that was used by the business for the purchase of supplies and materials. On June 3, 2013, William Kinney filed a *pro se* motion to intervene as a party based upon the assertion that he is a partner in the business known as Kinney Custom Interiors. A hearing

on various pretrial motions was held on July 1, 2013. In the Trial Court's order memorializing the rulings made at the hearing, the Trial Court stated that "a number of motions have been filed by the Defendants, including a Motion for Summary Judgment and two Motions to Amend which were set by Notice for hearing on July 5, 2013." The Trial Court further noted that "[a]dditional motions ha[d] been filed by Plaintiff and Defendants." The Trial Court determined that Plaintiff's counsel had "conflicts on July 5th and that discovery depositions of the Defendants which have been scheduled twice previously have not yet been conducted." The Trial Court therefore granted Plaintiff's motion for a continuance, agreeing "that depositions should be conducted prior to requiring the Plaintiff's response to any of the additional pending motions." The Trial Court ordered the Original Defendants to appear for depositions at the offices of Plaintiff's counsel on July 18, 2013. The Trial Court further ordered that all other pending motions in the case would be heard on September 6, 2013. At the hearing on September 6, 2013, attorney David C. Lee filed a notice of appearance on behalf of Margaret Kinney, which also indicated that counsel was withdrawing all pending motions previously filed *pro se* by Margaret Kinney.

Another hearing was held on August 11, 2014, at which William Kinney verbally agreed to be added as an additional Defendant as set forth in an Amended Complaint filed by Plaintiff. Immediately after accepting William Kinney's agreement to be added as a Defendant, the Trial Court took up Plaintiff's motion for the appointment of a Special Master. In a written order entered that same day, the Trial Court memorialized its ruling granting Plaintiff's motion to add William Kinney as an additional Defendant and allowing Plaintiff's Amended Complaint naming William Kinney as an additional Defendant to be filed. William Kinney was not formally served with the Amended Complaint until September 12, 2014. On November 17, 2014, he filed a Motion to Dismiss.

At a hearing held on December 1, 2014, the Trial Court heard William Kinney's motion to dismiss, and denied the motion. The Trial Court also determined that it would appoint the Special Master previously suggested by Plaintiff's counsel during the August 11, 2014 hearing. A written order referring the case to the Special Master was entered on December 2, 2014. A written order denying William Kinney's motion to dismiss was entered on December 11, 2014.

Counsel for Margaret Kinney filed a motion to withdraw in January of 2015, before the parties appeared before the Special Master for a hearing in February of 2015. The Special Master filed his report on April 30, 2015, determining that the amount due on the line of credit at issue in this case, after application of all credits and payments, was $32,912.95. However, before the Trial Court could consider whether to adopt the findings of the Special Master, Defendants filed a Notice of Removal to the United States District Court for Eastern District of Tennessee, where the case remained until February of 2016,

- 2 -

when it was remanded back to state court. Plaintiff then filed, in April of 2016, a notice of voluntary non-suit against Chris Kinney, which the Trial Court accepted. In the order non-suiting all of Plaintiff's claims against Chris Kinney, the Trial Court noted that Chris Kinney was deceased.[1]

In May of 2016, Defendants filed their Motion for Disqualification or Recusal of the Trial Court Judge alleging that they had "experience[d] bias in all previous court proceedings" in the case and asserting that they believed they would "continue to experience bias in favor of the adverse party in this matter." In support of these assertions, Defendants alleged that the Trial Court Judge had demonstrated bias against them by: (1) granting Plaintiff a continuance at the July 1, 2013 hearing and refusing to hear Original Defendants' motion for summary judgment on that date; (2) refusing to hear Original Defendants' discovery motions at the July 1, 2013 hearing, but ordering Original Defendants to appear for depositions noticed by Plaintiff; (3) refusing to hear William Kinney's motion to intervene at the July 1, 2013 hearing; (4) considering Plaintiff's motion for the appointment of a Special Master immediately after adding William Kinney as a Defendant at the August 11, 2014 hearing, even though William Kinney had not yet been served with the Amended Complaint; (5) denying William Kinney's motion to dismiss; (6) refusing to hear William Kinney's motion to compel discovery at a hearing held on January 16, 2015, simply because Plaintiff's counsel's indicated that he would answer the discovery request after the hearing; and (7) admonishing William Kinney in open court at the same January 16, 2015 hearing that he could not represent Margaret Kinney on a motion to compel, which she signed, even though according to William Kinney they enjoy the legal status of being "one person in the eyes of God," thereby making William Kinney's representation of Margaret Kinney in court not unlawful even though he is not licensed to practice law.

Defendants also alleged in support of their Motion for Disqualification or Recusal that they believed the Trial Court Judge "may have a social relationship with the Plaintiff's family and business partners, as well as the [P]laintiff's law firm." Specifically, Defendants asserted that they had learned during the course of the case that persons affiliated with Plaintiff's company, and their relatives, had donated to the Trial Court Judge's campaign and attended church with the Trial Court Judge. Defendants asserted in their motion that, based upon these connections, "it is reasonable to assume that personal opinions, including personal knowledge of disputed facts concerning the case, may have been expressed to [the Trial Court Judge] by the friends, relatives, and business partners of [the owners of Plaintiff]." Defendants also alleged that the law firm representing Plaintiff

---

[1]Only after filing their Motion for Disqualification or Recusal did Defendants finally file, in June of 2016, a suggestion of death pursuant to Rule 25.01 of the Tennessee Rules of Civil Procedure noting the death of Chris Kinney.

- 3 -

in this case "may also have a personal relationship" with the Trial Court Judge because: (1) the Judge serves as the Director of the Blount County Historic Trust and one of the named partners of the law firm "has performed pro bono activities for the Blount County Historic Trust"; (2) a different named partner in the law firm had donated to the Judge's political campaign; (3) the Special Master recommended by Plaintiff's counsel, as well as the Special Master's business partner, had both contributed to the Judge's campaign; (4) the Judge served with counsel for the Plaintiff on the Blount County Library's Director search committee, which was chaired by one of the named partners in the law firm; (5) the Judge and counsel for the Plaintiff are members of the Library Board of Trustees; (6) another partner in the law firm is the President of the Blount County Library Foundation; (7) the Judge used to be an attorney in the law firm; and (8) counsel for the Plaintiff has helped the Judge promote at least one of the books he has written.

In a twenty-eight page order, the Trial Court Judge denied Defendants' Motion for Disqualification or Recusal. The Judge began by meticulously explaining his reasons for the rulings and decisions Defendants had indicated in their motion demonstrated that he was biased against them. The Judge then determined that none of the remaining allegations in the motion supported the conclusion that the Judge had an actual conflict of interest that required recusal, or that any of the extra-judicial activities cited in the motion would lead a reasonable person to question the Judge's impartiality. Specifically, the Judge noted that "[n]o one has had any discussions with the Court about this case, or any of the parties to this case, outside open hearings in the courtroom." The Judge acknowledged that he has attended the same church noted by Defendants as having been attended by relatives of the principals of Plaintiff, but denied ever having had a discussion with these individuals at church or otherwise. The Judge also stated that one of these same relatives of the principals of Plaintiff had contributed to the Judge's judicial campaign in the election preceding the last election in which the Judge participated. The Judge further admitted that one of the partners in the law firm representing Plaintiff, as well as the Special Master appointed in this case and that attorney's law partner, had all contributed to the Judge's judicial campaign in the election preceding the last election in which the Judge participated. However, with regard to all of these financial contributions, the Judge pointed out that the amounts contributed were minimal at best as compared to the total amount of financial contributions received by the campaign. While acknowledging that he has been involved in the Blount County Historic Trust along with one of the named partners in the law firm representing Plaintiff, the Judge indicated that he did not recall that named partner ever having performed any pro bono legal service for the Historic Trust. The Judge also admitted to serving on the Board of Trustees for the Blount County Library, but denied ever serving on the search committee for the new Director for the library or ever having a discussion with the President of the Blount County Library Foundation, who is a member of Plaintiff's law firm, outside the context of a meeting of the Board of Trustees. The Judge further admitted to having been an attorney in the Plaintiff's law firm and to

having represented clients with Plaintiff's counsel in the past, but stated unequivocally that he had not discussed any of their prior cases with Plaintiff's counsel since he became a judge in January of 2005. With regard to the allegation that counsel for Plaintiff had helped the Judge promote at least one of the books he has written, the Judge explained:

> It is true that the undersigned judge has co-authored two books which are photographic histories of two local communities. It is also true that there were book signings. The Court has no knowledge of [an] alleged elevator discussion [between Plaintiff's counsel and the Judge's secretary about a book signing]. The Court has no recollection of Plaintiff's counsel ever having been involved in any of the book signings, and does not believe that he had any such involvement, although it is possible he might have attended a book signing. The Court has discussed this matter with the Court's secretary, and she had no recollection of any such discussion.

The Judge concluded that none of these allegations in Defendants' motion would lead a reasonable person to question his ability to be impartial. The Judge went on to state that "[t]here is simply no merit to any suggestion that the Court has denied due process of law to Defendants or in any way treated them unfairly." The Judge also made clear that "[a]ny relationships between the Court and any members or employees of [the law firm representing Plaintiff] are *de minimis*." With regard to Defendants' complaints about the Judge's rulings in the case, the Judge explained that "[m]any of the allegations made by Defendants are simply not correct or are distortions of what actually transpired before the Court" and that "[n]one of the Court's adverse rulings against Defendant[s] in this case evidence or establish any bias toward them." The Judge finally noted that an attorney's contributions to a judicial campaign, in the absence of other facts, does not require recusal of the judge and that, in any event, all of the contributions noted by Defendants were not to the Judge's most recent campaign and were not contributions from any litigant or attorney for a litigant in the present case. The Judge concluded by noting that he was obligated to hear cases when he could do so "fairly and impartially," and that he could not simply disqualify or recuse himself "because a case is difficult or messy, just to follow the course of least resistance."

Defendants then timely filed their petition for recusal appeal in this Court pursuant to Rule 10B. Pursuant to Section 2.05 of Rule 10B, this Court directed counsel for Plaintiff to file an Answer to the Petition. Having reviewed Defendants' petition and supporting documents submitted with the petition, together with Plaintiff's answer, and the appendix thereto, we conclude that additional briefing and oral argument are unnecessary. As such, we proceed to decide this appeal in accordance with sections 2.05 and 2.06 of Rule 10B.

ANALYSIS

Without question, "[t]he right to a fair trial before an impartial tribunal is a fundamental constitutional right." *Bean v. Bailey*, 280 S.W.3d 798, 803 (Tenn. 2009) (quoting *State v. Austin*, 87 S.W.3d 447, 470 (Tenn. 2002)); *see also* Tenn. Const. Art. VI, § 11. This constitutional right "is intended 'to guard against the prejudgment of the rights of litigants and to avoid situations in which the litigants might have cause to conclude that the court had reached a prejudged conclusion because of interest, partiality, or favor.'" Id. (quoting *Austin*, 87 S.W.3d at 470). "[P]reservation of the public's confidence in judicial neutrality requires not only that the judge be impartial in fact, but also that the judge be perceived to be impartial." *Kinard v. Kinard*, 986 S.W.2d 220, 228 (Tenn. Ct. App. 1998); *see also Offutt v. United States*, 348 U.S. 11, 14 (1954) (holding that "justice must satisfy the appearance of justice"). As such, Rule 2.11(A) of the Code of Judicial Conduct as set forth in Rule 10 of the Rules of the Supreme Court of Tennessee requires a judge to recuse himself or herself "in any proceeding in which the judge's impartiality might reasonably be questioned." *See also Smith v. State*, 357 S.W.3d 322, 341 (Tenn. 2011)(noting that recusal is required, even if a judge subjectively believes he or she can be fair and impartial, whenever "'the judge's impartiality might be reasonably questioned because the appearance of bias is as injurious to the integrity of the judicial system as actual bias'")(quoting *Bean*, 280 S.W.3d at 805).

The terms "bias" and "prejudice" generally "refer to a state of mind or attitude that works to predispose a judge for or against a party"; however, "[n]ot every bias, partiality, or prejudice merits recusal." *Alley v. State*, 882 S.W.2d 810, 821 (Tenn. Crim. App. 1994). To merit disqualification of a trial judge, "prejudice must be of a personal character, directed at the litigant, 'must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from . . . participation in the case.'" *Id.* (ellipsis in *Alley*). However, "[i]f the bias is based upon actual observance of witnesses and evidence given during the trial, the judge's prejudice does not disqualify the judge." *Id.* In addition, "[a] trial judge's adverse rulings are not usually sufficient to establish bias." *State v. Cannon*, 254 S.W.3d 287, 308 (Tenn. 2008). "Rulings of a trial judge, even if erroneous, numerous and continuous, do not, without more, justify disqualification." *Alley*, 882 S.W.2d at 821; *see also State v. Reid*, 313 S.W.3d 792, 816 (Tenn. 2006).

As the Trial Court Judge noted in the order on review, "a judge should not decide to recuse unless a recusal is truly called for under the circumstances." *Rose v. Cookeville Reg'l Med. Ctr.*, No. M2007-2368-COA-R3-CV, 2008 WL 2078056, * 2 (Tenn. Ct. App. May 14, 2008). This is true because "'[a] judge has as much of a duty not to recuse himself absent a factual basis for doing so as he does to step aside when recusal is warranted.'" *Id.* at *2-3 (quoting *Mass v. McClenahan*, No. 93 Civ. 3290(JSM), 1995 WL

106106, * 1 (S.D.N.Y. Mar. 9, 1995). Recusal based upon an asserted appearance of bias or prejudice "'is appropriate only if the facts provide what an objective, knowledgeable member of the public would find to be a reasonable basis for doubting the judge's impartiality.'" *Id.* at *3 (quoting *IN RE United States*, 666 F.2d 690, 695 (1st Cir. 1981)).

In this case, there simply are no facts alleged or shown in the record that would lead a well-informed, disinterested observer to question the impartiality of the Judge in this case. First, it cannot be argued that the Judge had a duty to recuse himself simply because Defendants are dissatisfied with the rulings against them. *Cannon*, 254 S.W.3d at 308. Second, the Judge had no duty to recuse himself merely because he had served on one or more local civic boards with attorneys who are members of the law firm representing Plaintiff in this case. *Cf. Van Duyn v. Electronic Innovations, LLC*, No. E2013-01167-COA-10B-CV, 2013 WL 2639344, * 4 (Tenn. Ct. App. Jun. 10, 2013) (determining that judge's mere service with litigant on local civic board did not require the judge to recuse himself from presiding over litigant's case). Third, recusal of the Judge cannot be grounded on the mere existence of the financial contributions, identified by Defendants in their motion, that were made by attorneys and others to the Judge's judicial campaign that occurred years ago. *See IN RE Gabriel V.*, No. M2014-01298-COA-T10B-CV, 2014 WL 3808916, * 3 (Tenn. Ct. App. Jul. 31, 2014) (determining that "the fact that an attorney has contributed to a judge's campaign, has endorsed a judge's candidacy, or has been listed on a judge's campaign committee will not require automatic disqualification of the judge" unless the attorney has had more active involvement in the judge's campaign or leadership in said campaign). Finally, "[t]he mere existence of a friendship between a judge and an attorney is not sufficient, standing alone, to mandate recusal." *State v. Cannon*, 254 S.W.3d 287, 308 (Tenn. 2008); *see also State v. Madden*, No. M2012-02473-CCA-R3-CD, 2014 WL 931031, at *7 (Tenn. Crim. App. Mar. 11, 2014) ("Simply establishing that a trial judge is acquainted with a lawyer or other person connected to a case does not, without more, suffice to establish an abuse of discretion in the denial of a recusal motion.").

## CONCLUSION

Having determined that the record provided by Defendants does not demonstrate error, we affirm the Trial Court's denial of Defendants' Motion for Disqualification or Recusal. Defendants are taxed with the costs of this appeal, for which execution may issue. This case is remanded for further proceedings.

_____
JOHN W. MCCLARTY, JUDGE