IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 25, 2018

**PHILIP FOXWELL BERG v. KEIKO SHIGENO BERG**

**Appeal from the Circuit Court for Davidson County**
**No. 12D575    Philip E. Smith, Judge**

_____

**No. M2018-01163-COA-T10B-CV**

_____

A Tennessee Supreme Court Rule 10B petition for recusal appeal was filed in this Court after the trial court denied a motion for recusal.  For the reasons stated herein, we affirm the trial court's denial of the motion.

**Tenn. Sup. Ct. R. 10B Interlocutory Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which ANDY D. BENNETT and THOMAS R. FRIERSON, II, JJ., joined.

Cynthia A. Cheatham, Nashville, Tennessee, for the appellant, Keiko Shigeno Berg.

Gregory D. Smith, Nashville, Tennessee, for the appellee, Philip Foxwell Shigeno Berg.

**OPINION**

**Background and Procedural History**

The present appeal stems from a custody dispute between Keiko Shigeno Berg ("Mother") and Philip Foxwell Berg ("Father").  The parties, who are the parents to two minor children, divorced in 2013.  Although Mother was designated as the primary residential parent incident to the divorce, the parties were awarded equal parenting time and joint decision-making authority regarding education, non-emergency health care, religion, and extracurricular activities.

In March 2016, Mother filed a petition to modify the parties' permanent parenting plan.  She alleged, among other things, that she should be the sole authority for decisions regarding the children's non-emergency medical care, extracurricular activities, and

education. Father responded in May 2016 by filing an answer and counter-petition. Therein, Father requested that he be named the primary residential parent, that his parenting time be increased, and that he be named the sole decision-maker for the children's health care, education, religion, and extracurricular activities.

A trial was eventually scheduled for seven days. The first three days of proof were to be heard in June 2017, and the remainder of the trial was set for the following fall. Although the trial court had heard three days of proof by the end of June 2017, the fall trial dates did not occur as scheduled. Following a continuance, the trial was set to resume on March 13, 2018.

During the pendency of the litigation, the parties had agreed that Dr. Bradley Freeman would conduct evaluations of the parties and their children. Dr. Freeman's resulting report was sent to the trial court on March 9, 2018, and the parties met in the trial court's chambers a few days later on March 12 to review the report. The following day, on March 13, Father filed a motion to suspend Mother's parenting time based on the contents of Dr. Freeman's report. A few short hours after Father's motion was filed, Mother filed a motion to continue the trial.

Following a hearing, the trial court entered an order addressing both motions. The trial court's order continued the trial indefinitely and stated that Father "is immediately awarded exclusive possession of the minor children." In addition to stating that it would set and conduct a status conference within approximately 60 days, the trial court directed Mother to submit herself to counseling to address the issues found in Dr. Freeman's report.

On April 27, 2018, the trial court held a hearing where a number of matters were discussed. The trial court first entertained concerns raised by Mother's counsel concerning a letter than had been submitted to the court by Dr. Freeman. After this matter was discussed, Mother's counsel expressed concern over her client's need for counseling and the selection of a provider. Observing that this issue was not properly before him, the trial judge stated as follows: "[I]f it's not before me, get it before me in a motion form, and I will hear it. But you're going to have to file it two weeks in advance. That's just the way we work." Mother's counsel responded by arguing that this case involved a unique circumstance, to which the trial judge suggested that an emergency motion be filed. When it was brought to the trial judge's attention that Father had a motion set for the following Thursday, the trial judge indicated that he would take up Mother's issue concerning counseling again at that time, or potentially, even earlier by way of a conference call.

On Thursday, May 3, 2018, another hearing was held. Although the motion Father had previously set for that date was struck prior to the hearing, two motions filed by Mother were discussed. In addition to discussing a motion that Mother had filed

pertaining to the counseling issue raised at the April 27 hearing, the court discussed a motion to re-establish parenting time that had been filed by Mother on May 2. At the opening of the hearing, the trial judge indicated to Mother's counsel that he would not entertain the motion relating to parenting time:

> Well, you know, you can't file this the night before and expect them to hear it, Ms. Cheatham. I'm not going to do that. I said you could hear this Motion on New Counselors, I did not say you could hear this. So I will not suspend the Rules on this.

The trial judge indicated that he would hear Mother's motion if she set it "on Friday," to which the below colloquy followed:

> [Mother's counsel]: This Friday? How long?
>
> The Court: Well, two weeks with the Rules.
>
> [Mother's counsel]: Well, there's --
>
> The Court: Ms. Cheatham, you don't want to follow the Rules in this Court and you're going to follow the Rules. You are the only attorney I have that comes in here not following my Rules. Why do you think you are special and are exempt from these Rules? Please explain that, why you think you are exempt from the Rules of Civil Procedure, and the Local Rules of Davidson County and the Chamber Rules of Fourth Circuit. Tell me why.
>
> [Mother's counsel]: I do not.
>
> The Court: You thought you were going to hear this and you [faxed] it to them at 4:15 last night?
>
> [Mother's counsel]: Embodied in that is some requests for some guidance that [Mother's] prior Counsel asked going back two weeks. Now, [Father] --
>
> The Court: And it was not heard. Put that Motion back on and I'll hear it.

Later in the hearing, the court indicated that it would consider giving Mother parenting time once her motion was set and heard. The trial judge stated that he was a "stickler for the Rules" in this respect, to which Mother's counsel then argued: "Well, Keisling says no parent will lose their time." When the trial judge interjected to Mother's counsel's argument, Mother's counsel commented, "That's what I get every time." The

trial judge then responded by stating that Mother's counsel showed "no respect" and was the "most obnoxious lawyer that comes in here."

On May 18, 2018, Mother filed a motion requesting that the trial judge recuse himself. Mother's motion averred that she believed she would not receive a fair hearing by the trial court. In addition to recounting the trial court's hearings from April 27 and May 3 as support for this assertion, the motion pointed to the hearing on Father's motion to suspend parenting time, which occurred on March 13, 2018. The latter hearing, Mother noted, resulted in a "no contact" order. An order denying Mother's motion to recuse was entered by the trial court on June 4, 2018, and the present appeal soon followed when Mother filed a petition for recusal appeal in this Court pursuant to Tennessee Supreme Court Rule 10B. Upon receipt of Mother's submission, we directed Father to file an answer to her petition. Father has since filed a response in opposition to Mother's petition for recusal appeal. Having reviewed Mother's petition for recusal appeal, along with its supporting materials, and Father's response to the petition, we conclude that additional briefing and oral argument are unnecessary. Accordingly, we proceed to review Mother's petition in accordance with Tennessee Supreme Court Rule 10B sections 2.05 and 2.06.

## Issues Presented

Although Mother presents several discrete issues for our review, the only order this Court may review on an appeal pursuant to Tennessee Supreme Court Rule 10B is the trial court's order denying a motion to recuse. *Duke v. Duke*, 398 S.W.3d 665, 668 (Tenn. Ct. App. 2012). Our sole concern, therefore, is whether the trial court erred in denying Mother's motion for recusal. *McKenzie v. McKenzie*, No. M2014-00010-COA-T10B-CV, 2014 WL 575908, at *1 (Tenn. Ct. App. Feb. 11, 2014) (citation omitted).

## Standard of Review

We review the trial court's ruling on the motion for recusal under a de novo standard of review. Tenn. Sup. Ct. R. 10B, § 2.01.

## Discussion

"The right to a fair trial before an impartial tribunal is a fundamental constitutional right." *Bean v. Bailey*, 280 S.W.3d 798, 803 (Tenn. 2009) (quoting *State v. Austin*, 87 S.W.3d 447, 470 (Tenn. 2002)). Preserving the public's confidence in judicial neutrality, however, requires more than ensuring that a judge is impartial in fact. *Kinard v. Kinard*, 986 S.W.2d 220, 228 (Tenn. Ct. App. 1998) (citations omitted). It is also important that a judge be perceived to be impartial. *Id.* (citations omitted). In keeping with this principle, Tennessee Supreme Court Rule 10, Code of Judicial Conduct Rule 2.11 provides that "[a] judge shall disqualify himself or herself in any proceeding in which the judge's

impartiality might reasonably be questioned[.]"  Even when a judge sincerely believes that he or she can preside over a matter in a fair and impartial manner, recusal is nonetheless required where a reasonable person "in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality."  *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 564-65 (Tenn. 2001) (quoting *Alley v. State*, 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994)).

As a general matter, any alleged bias must arise from extrajudicial sources in order to justify a recusal.  *McKenzie*, 2014 WL 575908, at *3.  However, if a bias is alleged to stem from events occurring in the course of the litigation of a case, the party seeking a judge's recusal has a greater burden to show that recusal is required.  *Id.*  In such circumstances, the party seeking recusal must show that the bias "is so pervasive that it is sufficient to deny the litigant a fair trial."  *Id.*

Before we can reach the question of whether there is any indication of bias that might require recusal in this case, we first consider whether the motion for recusal filed in the trial court and the petition for recusal appeal filed in this Court were defective.  At the outset of our review, we observe that Mother's recusal motion was, in fact, defective.  Section 1.01 of Tennessee Supreme Court Rule 10B provides that the motion for recusal "shall be supported by an affidavit under oath or a declaration under penalty of perjury *on personal knowledge* and by other appropriate materials."  Tenn. Sup. Ct. R. 10B, § 1.01. (emphasis added).  This affidavit requirement is clearly mandatory, *see Elliott v. Elliott*, No. E2012-02448-COA-10B-CV, 2012 WL 5990268, at *3 (Tenn. Ct. App. Nov. 30, 2012) (citation omitted), and in a previous appeal, we affirmed the trial court's denial of a motion for recusal when the affidavit required by Rule 10B was not in the appellate record.  *Childress v. United Parcel Serv. Inc.*, No. W2016-00688-COA-T10B-CV, 2016 WL 3226316, at *3 (Tenn. Ct. App. June 3, 2016).  Here, although an affidavit in support of the motion to recuse is included in the record provided, it clearly does not meet the standard set forth in Rule 10B.  Instead of being made under oath on "personal knowledge" as is required, the affidavit filed in this case includes an oath attesting that the statements included are "true to the best of [Mother's] knowledge, information and belief."  Averring that something is true to the best of one's knowledge, information, and belief does not signify that it is based on personal knowledge.  *See Bridgewater v. Adamczyk*, No. M2009-01582-COA-R3-CV, 2010 WL 1293801, at * 4 (Tenn. Ct. App. Apr. 1, 2010) (noting that personal knowledge is knowledge gained through firsthand experience or observation); *Seals v. Tri-State Defender, Inc.*, No. 02A01-9806-CH-00172, 1999 WL 628074, at *2 (Tenn. Ct. App. Aug. 16, 1999) (noting that an affidavit stating a fact "to my best knowledge and ability" was not made on personal knowledge); *see also* Edward J. Levin, *"Best" Is Not Always Best When it Comes To Knowledge*, 30 Prob. & Prop. 44, 45 (Jan./Feb. 2016) (noting that the term "best knowledge" embodies a level of uncertainty and that a statement made to the "best knowledge" of a person does not mean that the statement is based on that individual's personal knowledge).

Recognizing that the motion for recusal was not properly supported in this respect, the trial court noted as follows when it denied the motion:

> [T]he oath affixed to [Mother's] Affidavit, which [Mother] signed, indicates that the statements it contains "are true to the best of her knowledge, information and belief," – not that they are based on her personal knowledge of the events they describe. Again, an Affidavit supporting a motion to recuse must be sworn under oath and based on the Affiant's personal knowledge. [Mother's] Affidavit does not comply with this requirement. Despite the deficiencies of her Affidavit, however, the Court has endeavored to address the merits of [Mother's] motion.

We are of the opinion that the trial court was not required to attempt to address the merits of Mother's articulated grievances given the affidavit's deficiencies under Rule 10B. As we have noted, section 1.01 of that rule mandates that the motion for recusal "shall be supported by an affidavit under oath or a declaration under penalty of perjury on personal knowledge." Tenn. Sup. Ct. R. 10B, § 1.01. Here, Mother's motion simply failed to satisfy this requirement.[1]

Although the deficiency detailed above provides a basis on its own for affirming the denial of Mother's recusal motion, we further note that the record presented on appeal does not appear to comply with the mandates of Rule 10B. In an expedited interlocutory appeal under Rule 10B, the only record we will generally have is the "record provided by the appellant with his or her petition pursuant to the mandatory language of section 2.03 of the rule." *Elliott*, 2012 WL 5990268, at *2. Section 2.03 requires that the petition for recusal appeal "shall be accompanied by a copy of the motion [for recusal] and *all supporting documents* filed in the trial court." Tenn. Sup. Ct. R. 10B, § 2.03 (emphasis added). Although there is no question that Mother filed, among other things, her motion for recusal and its accompanying affidavit on appeal, the record provided actually suggests that not all supporting documents filed in the trial court were filed with this Court. Notably, we turn to Mother's affidavit, which, as we have already noted, fails to satisfy the "personal knowledge" requirement of Rule 10B. Although Mother's affidavit

---

[1] We note that in a previous opinion, a panel of this Court concluded that a party's sworn statement (*in his recusal motion*) that statements were "true to the best of [his] knowledge, information and belief," satisfied the requirements of Rule 10B. *See In re Samuel P.*, No. W2016-01592-COA-T10B-CV, 2016 WL 4547543, at *2 (Tenn. Ct. App. Aug. 31, 2016). Although we have no specific reservations about the conclusion that a signed, sworn statement *in the motion* could satisfy the requirements of Rule 10B, we disagree with the ultimate decision in *In re Samuel P.* regarding the sufficiency of the sworn statement at issue therein. It is somewhat unclear to us whether the panel in that case was of the opinion that the "personal knowledge" requirement was satisfied or was of the opinion that the "personal knowledge" requirement only applied to declarations under penalty of perjury made under Rule 10B, as opposed to affidavits under oath made under the Rule. We are of the opinion that affidavits and declarations made under the Rule must be made on personal knowledge, and accordingly, are of the opinion that the statement at issue in *In re Samuel P.* was not, in fact, sufficient.

- 6 -

references a number of supporting exhibits that are supposedly attached thereto, no such exhibits are attached to the affidavit that was filed as a part of Mother's petition on appeal. As we have noted previously, "[w]e emphasize to counsel that the accelerated nature of these interlocutory appeals as of right requires meticulous compliance with the provisions of Rule 10B regarding the content of the record provided to this court so as to allow this court to meet its obligations under section 2.06 of [Rule 10B], which requires this Court to decide these appeals 'on an expedited basis . . . .'". *Elliott*, 2012 WL 5990268, at *3. "[I]t is imperative that litigants file their petitions for recusal appeal in compliance with the mandatory requirements of Rule 10B in the first instance." *Id.*

Even if we were to look past Mother's failure to satisfy the mandatory requirements of Rule 10B, we would still conclude that the trial court's order should be affirmed. In her petition, Mother cites the basis for recusal as "the [trial court's] conduct toward [Mother] and her counsel . . . during the March 13, 2018, April 27, 2018 and May 3, 2018 hearings." Given the timeline in this case, it is unclear to us how Mother has not waived her right to question the trial judge's impartiality. In addition to the proceedings already detailed herein, the record reflects that the trial court held a hearing on May 10, 2018. The May 10 hearing was held by telephone conference and considered issues pertaining to Mother's counseling. During the hearing, the trial court ordered Mother to begin counseling with Dr. Jay Woodman. It is clear that Mother did not find this ruling to be favorable. The affidavit accompanying her motion to recuse spoke about this issue and briefly detailed her involvement with another therapist, Dr. Tracia Junkerth. Expressing her dissatisfaction with the trial court's May 10 ruling, Mother's affidavit stated as follows: "[B]oth the father and I saw Dr. Junkerth many years ago and I felt he would not have a problem with her. The Court stated it was . . . going to order me to see Dr. Woodman, a situation which could further impede my progress in getting my children returned to me."

Despite being of the opinion that disqualifying events took place on March 13, Mother proceeded to the April 27 hearing without filing a motion to recuse. Similarly, despite now alleging that the April 27 hearing implicated a second basis for recusal, Mother participated in the May 3 hearing before the trial court judge without filing a motion for recusal. Finally, despite her present contention that disqualifying events occurred on March 13, April 27, and May 3, the May 10 hearing occurred in the absence of a motion requesting recusal. Mother did not file her motion for recusal until May 18, 2018, after she had received the unfavorable ruling regarding Dr. Woodman.

"[R]ecusal motions must be filed promptly after the facts forming the basis for the motion become known." *Kinard*, 986 S.W.2d at 228 (citations omitted). "Courts frown upon the manipulation of the impartiality issue to gain procedural advantage and will not permit litigants to refrain from asserting known grounds for disqualification in order 'to experiment with the court[.]'" *Id.* (citations omitted). "It is a well known and well accepted rule that a party must complain and seek relief immediately after the occurrence

- 7 -

of a prejudicial event and may not silently preserve the event as an 'ace in the hole' to be used in event of an adverse decision." *Gotwald v. Gotwald*, 768 S.W.2d 689, 694 (Tenn. Ct. App. 1988) (citation omitted).

Here, despite claiming to possess many complaints about the trial judge, Mother never sought prompt relief. She allowed multiple hearings to materialize and did not assert the impartiality issue in the trial court until after she had received an adverse decision regarding counseling with Dr. Woodman. With regard to the May 10 hearing specifically, we note that it took place in the absence of any objection as to the judge's ability to preside despite the occurrence of all events upon which Mother now predicates the judge's recusal. Under these circumstances, we are of the opinion that Mother has waived her right to complain. *See Kinard*, 986 S.W.2d at 228 (noting that the failure to assert recusal motions in a timely manner results in a waiver of a party's right to question a judge's impartiality).

The issue of waiver notwithstanding, we are of the opinion that the merits of this case do not warrant recusal. Mother's grievance with respect to the March 13 hearing appears to be related to the substantive merits of the trial court's decision to cut off her contact with the children. One of the specific issues she has presented for our review, for example, asks whether the trial judge's recusal was required due to his decision to take her children in violation of her due process. "[T]he mere fact that a judge has ruled adversely to a party . . . is not grounds for recusal." *McKenzie*, 2014 WL 575908, at *4 (citations omitted). In fact, "[r]ulings of a trial judge, even if erroneous, numerous and continuous, do not, without more, justify disqualification." *Id.* (quoting *Alley*, 882 S.W.2d at 821). Although we do not express an opinion in this appeal whether the trial court's no-contact order was legally justified, it does not, by itself, present a basis for the judge's recusal.[2]

The rest of Mother's grievances on appeal appear to relate to the trial judge's conduct towards her counsel during the April 27 and May 3 hearings. Mother argues that the trial judge's anger, which included slapping his hand on the bench during the May 3 hearing, warrants his recusal. As we have noted, if a bias is alleged to stem from events occurring in the course of the litigation of a case, the party seeking a judge's recusal has a greater burden to show that recusal is required. *Id.* at *3. In such circumstances, the party seeking recusal must show that the bias "is so pervasive that it is sufficient to deny the litigant a fair trial." *Id.* A trial judge's remarks that are critical or hostile to the parties or their counsel ordinarily do not support a partiality challenge. *Id.* at *4 (citations omitted). "A rule that allowed an attorney to have his case transferred to another judge by quarreling with the court is not in the interest of justice." *Id.* at *5. "A

---

[2] In any event, we note that the "Conclusion" section of Mother's petition on appeal eschews any reliance on the March 13 hearing as a basis for recusal and instead points exclusively to the April 27 and May 3 hearings.

judge's irritation or exasperation with counsel, criticism of counsel for perceived delays or failures to follow rules, friction occurring during litigation, or even sanctions and contempt charges do not establish the objective personal bias that would prevent a fair assessment of the merits of the case." *Id.* (citations omitted); *see also Liteky v. U.S.*, 510 U.S. 540, 555-56 (1994) ("*Not* establishing bias or partiality . . . are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women . . . sometimes display. A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune."). "Any comments made by the trial court must be construed in the context of all the facts and circumstances to determine whether a reasonable person would construe those remarks as indicating partiality on the merits of the case." *McKenzie*, 2014 WL 575908, at *6 (citation omitted). To merit recusal, an impermissible pervasive bias must be evidenced. *Veard v. Veard*, No. M2017-00898-COA-T10B-CV, 2017 WL 2179921, at *3 (Tenn. Ct. App. May 16, 2017).

Although Mother argues that the trial judge adopted an accusatory tone and became angered when Mother brought up the issue of counseling towards the end of the April 27 hearing, the transcript merely reflects that the trial judge indicated he was not going to hear a matter that was not properly set before him. Addressing Mother's counsel about this, the trial judge stated: "What you're asking me to do is to hear something today that is not before the Court; right? How is that fair to any of these other lawyers or the clients?" The court's comments towards Mother's counsel do not merit recusal. As we have noted, " [a] judge's irritation or exasperation with counsel, criticism of counsel for perceived delays or failures to follow rules, friction occurring during litigation, or even sanctions and contempt charges do not establish the objective personal bias that would prevent a fair assessment of the merits of the case." *McKenzie*, 2014 WL 575908, at *5 (citations omitted).

Mother's primary concern, however, appears to be related to the trial judge's conduct during the May 3 hearing, including the fact that the judge slapped his hand on the bench while criticizing counsel. Although we are of the opinion that the trial judge could have exhibited more restraint in his rebuke of counsel,[3] the frustration and anger that manifested do not signify a bias so pervasive that it is sufficient to deny Mother a fair trial. The trial judge's criticism of Mother's counsel stemmed from concerns over orderly procedure and failure to follow rules.[4] For example, when Mother's counsel inquired about when her motion to re-establish parenting time could be heard, the trial

---

[3] A trial judge, of course, in controlling his courtroom, always has the option of taking a recess to allow a cooling off period if the level of frustration between counsel and the court continues to escalate.

[4] Mother's petition on appeal does not suggest otherwise and contends that "[t]he crux of the court's fury was based on what it described as counsel not following its rules." She accuses the trial judge of "unleash[ing] on her attorney for . . . seeking a speedier mechanism under which to put on proof, so she can have her children returned."

judge informed her "two weeks with the Rules." It was after Mother's counsel appeared to begin to argue with the judge's position on this issue that the trial judge began his harsh rebuke of counsel, inquiring, among other things, why she thinks she is "special" and "exempt from [his] Rules." As just noted, judicial irritation over such issues does not present a basis for recusal. *See id.*

Similarly, at the end of the May 3 hearing, the trial judge's strong criticism of counsel followed Mother's counsel's apparent attempt to argue with the judge's position about setting motions in accordance with the rules. As previously indicated, once the trial judge stated that he was a "stickler for the Rules" and would consider giving Mother parenting time once her motion was set and heard, Mother's counsel then argued: "Well, Keisling says no parent will lose their time." The trial judge then cut off this argument, prompting counsel to comment that "[t]hat's what I get every time." Following this comment by counsel, the trial judge began his strong criticism of counsel.

In view of the above, particularly the fact that the alleged bias stems from the trial judge's frustration with Mother's counsel during the underlying proceedings, we conclude that recusal is not warranted in this case. The trial judge's expressions of annoyance and anger do not rise to the level of demonstrating a bias so pervasive to deny Mother a fair trial on the merits. Although the trial judge's conduct certainly reveals frustration with Mother's counsel regarding a perceived lack of respect for the rules and court procedures, we do not construe his conduct as indicating partiality on the merits of the case against Mother's interests or position.

**Conclusion**

In light of the foregoing discussion, the decision of the trial court is hereby affirmed.[5]

_____
ARNOLD B. GOLDIN, JUDGE

---

[5] On appeal, Father has raised a number of arguments as to why he believes the trial court's decision should be affirmed. To the extent this Opinion does not address some of his specific concerns, those issues are pretermitted.

- 10 -